OLD COLONY TRUST COMPANY *vs.* CHARLES G. WHITNEY
& others.

Suffolk.    May 21, 1929. — January 2, 1930.

Present: CROSBY, PIERCE, CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Probate Court,* Jury issues.    *Unsound Mind.    Undue Influence.    Will.
Evidence,* Competency, Opinion.

At the hearing of a motion, upon a petition for proof of the will and a
codicil of a woman, that issues for trial by jury be framed as to the
proper execution of the will and codicil, the soundness of mind of the
deceased and whether undue influence had been exercised upon her
by one of her brothers or by one who had been her companion "or
any other person or persons," it appeared that the will had been exe-
cuted five years, and the codicil one year, before the death of the
testatrix at the age of eighty-two years; that the will gave most of
her property to said brother, another brother and a sister if they
survived her, otherwise to a religious association; that both brothers
and the sister died before the testatrix and before the execution of
the codicil; that by the terms of the codicil the testatrix confirmed
the will excepting that she gave a sum of money to her companion;
that she had lived in close intimacy with her brothers and sister; and
that the contestants, who were the next of kin of the testatrix, were
given nothing by the will and codicil.    The contestants offered a
statement of proposed evidence to show that the testatrix had been
friendly to them; that she was miserly; that her whole family were
known to be miserly; that she did not actively manage her property;
that she left that to the first brother until his death and thereafter
to a bank; that she "had no idea of the nature or amount of her
estate"; that, beginning when she was seventy-four years of age,
she had had sicknesses and had become more feeble, both physically
and mentally, her feebleness being shown by "her difficulty in think-
ing, by her slow motions and speech, by her depressed emotions and
general listlessness, by her total lack of interest in current matters . . .
and by her incapacity to engage in effort of any sort"; that she knew
of the first brother's interest in having the religious association get
her family's money; and that a physician who had attended her .
about a year before her death had said that her complaints were the
"complaints of an old person" and that she was not insane.    There
was no specific evidence proposed to show that the will and codicil
were not executed according to law.    The motion was denied.    *Held,*
that
    (1) The expected evidence as to the testatrix's unsound mind and
as to undue influence was not sufficient to warrant the framing of the
issue as to the proper execution of the will and codicil;

(2) The testatrix's disposition of her property was not so unnatural, unreasonable or unjust to the contestants as to show of itself that she was of unsound mind;

(3) On all the expected evidence, there was no error in the denial of the motion as to the issue concerning the soundness of mind of the testatrix;

(4) Expected testimony of one, who occasionally called upon the testatrix and who was not her family physician, an expert or a witness to the will, that a year before her death she "did not have the mentality to make a will or understand the nature of one," could not have been considered by the judge: it would not have been competent at a trial of that issue;

(5) On all the expected evidence, the judge was warranted in denying the motion as to the issue concerning undue influence; furthermore, the execution of the codicil confirming the will, after the death of the first brother and after the testatrix had had an opportunity to change the will if she desired, rendered immaterial evidence as to undue influence on his part even if he had exercised it upon her;

(6) No issue properly could have been granted as to the undue influence of "any other person or persons";

(7) There was no error in the denial of the motion.

PETITION, filed in the Probate Court for the county of Suffolk on September 12, 1928, for proof of the will of Adeline Whitney, late of Boston.

Certain next of kin of the deceased moved that the issues described in the opinion be framed for trial by jury. The motion was heard by *Prest*, J., a stenographer having been appointed under G. L. c. 215, § 18, and was denied. The respondents appealed.

The case was argued at the bar in May, 1929, before *Crosby, Pierce, Sanderson, & Field*, JJ., and afterwards was submitted on briefs to all the Justices except *Rugg*, C.J.

*F. J. Johnson*, for the respondents.

*N. Leonard*, for the petitioner.

FIELD, J.   Three cousins who are next of kin of Adeline Whitney of Boston, who died August 25, 1928, unmarried, leaving an estate of over $300,000, contest the probate of an instrument dated June 5, 1923, and another dated August 9, 1927, purporting to be, respectively, her will and a codicil thereto.   They made a motion in the Probate Court that six issues be framed for submission to a jury (1) as to the execution of the will, (2) as to the execution of the codicil, (3) as to her soundness of mind on June 5, 1923, (4) as to

her soundness of mind on August 9, 1927, (5) as to the fraud or undue influence of Cyrus Henry Whitney, "or any other person or persons," and (6) as to the fraud or undue influence of Susie M. Bailey, "or any other person or persons." The case was heard upon a written offer of proof and an oral statement of expected evidence made by counsel for the contestants. The motion was denied and the contestants appealed.

1. Nothing in the statements of expected evidence tends to show specifically that either the will or the codicil was not executed according to law. The contestants argue, however, that the evidence which they expect to be able to present tending to show unsoundness of mind and undue influence inferentially tends to show that the decedent did not know the contents of the instruments or execute them with the understanding and purpose that they should be respectively her will and a codicil thereto. See *Fuller* v. *Sylvia*, 240 Mass. 49, 54. Irrespective of the decisions upon the other issues, this evidence does not go far enough to give rise to the comparatively rare situation which justifies the framing of an issue as to execution. See *Allen* v. *Guarente*, 253 Mass. 152, 155.

2. Upon the issues of unsoundness of mind at the time of the execution of the alleged will and at the time of the execution of the alleged codicil, the contestants rely upon expected proof that the deceased was friendly to them, yet gave them nothing by her will, that she was miserly, that she took no part in the active management of her property, which she committed to her brother Cyrus until his death in 1927, and thereafter to representatives of the petitioner, did not discuss investments with any person and "had no idea of the nature or amount of her estate" and that, beginning in 1920 when she was seventy-four years old, she had various sicknesses and as time went on became more and more feeble, and that this feebleness was mental as well as physical and "manifested itself by her difficulty in thinking, by her slow motions and speech, by her depressed emotions and general listlessness, by her total lack of interest in current matters and her desire to sit around when she was able

to be up, doing nothing, and by her incapacity to engage in effort of any sort . . ." The details of this expected evidence need not be recited.

It does not appear that the anticipated proof would show that the relation of the deceased to any of the contestants was one of close intimacy, that the contestants had any special claim of dependence upon her, or that she ever had manifested an intention to leave her property to them. By the will the bulk of her property was given to her sister Martha and her two brothers Cyrus and James, with whom she lived in close intimacy, and, in the event of her surviving them, to the American Unitarian Association which also was made the residuary legatee of each of them. After the sister and brothers died, no change was made by the deceased by her codicil except to provide for a legacy of $10,000 to her companion, Susie M. Bailey. While the deceased "was never known to discuss the American Unitarian Association," it is apparent from the fact that she made "an occasional remark in which she would repeat something that Cyrus had said to her" about it, that she knew of his interest in having that association get the benefit of "the Whitney money." Under these circumstances the disposition by the deceased of her property was not so unnatural, unreasonable or unjust to her next of kin that the will and codicil themselves have any substantial tendency to show that she was of unsound mind (see *Johnson* v. *Talbot,* 255 Mass. 155), and outside of these instruments there is no direct indication in the expected evidence that the deceased did not understand the relation in which she stood to those persons who ought to be in her mind when she undertook to dispose of her property at death. See *Becker* v. *Becker,* 238 Mass. 362, 366; *Taylor* v. *Creeley,* 257 Mass. 21, 29.

It would not follow from the failure of the deceased to manage her own property and her lack of knowledge about it, as shown by the expected evidence, that she was not able to understand and carry in her mind in a general way its nature and situation. See *Dunham* v. *Holmes,* 225 Mass. 68, 71; *Taylor* v. *Creeley, supra.* The statements as to her miserly habits are to be considered in connection with the

other statements to the effect that "the entire family were known to be misers." These habits and her other peculiarities as well as her age and feeble condition awaken caution to see "if mental capacity is impaired or gone." See *Whitney* v. *Twombly*, 136 Mass. 145, 147, 148. However, the expected evidence as to her physical condition is consistent with a statement made to counsel by the physician who attended her in 1927, that her complaints were the "complaints of an old person." His statement as to her mental condition was "that he didn't talk with her enough to say that she was of unsound mind but that he didn't know the legal definition of what unsound mind was, whether it meant insanity or not; that he would say she was not in any way insane." The anticipated evidence of a person who occasionally called upon her that in 1927 she "did not have the mentality to make a will or understand the nature of one" is not the opinion of a family physician, an expert or a witness to the will and would not be admissible at a trial of the issue. *Old Colony Trust Co.* v. *DiCola*, 233 Mass. 119, 124. Without further analysis, it is sufficient to say that the expected evidence does not go as far as that in *Smith* v. *Brewster*, 247 Mass. 395, or that in *New England Trust Co.* v. *Folsom*, 268 Mass. 342, in which cases denials of the issue as to unsound mind were reversed, or beyond the line established by the cases of *Union Trust Co. of Springfield* v. *Magenis*, 259 Mass. 409, *McIntosh* v. *McIntosh*, 263 Mass. 315, and *Taylor* v. *Callahan*, 265 Mass. 582, in which denials of this issue were sustained. See also *Johnson* v. *Talbot*, supra.

3. The expected evidence on the issues of fraud and undue influence of Cyrus Henry Whitney and Susie M. Bailey is primarily the evidence already referred to of the intimate relations of the deceased with her brother and with her companion, of the supervision of her affairs by her brother and of her condition of body and mind, and it is contended that from this evidence opportunity for and susceptibility to influence is to be inferred, and, in connection with the provisions of the will and the codicil, undue influence. Such anticipated direct evidence of domination as there is lacks

particularity. Denial of these issues on this statement of expected evidence was warranted by the decisions. See *Neill* v. *Brackett,* 234 Mass. 367; *Cummins* v. *McCawley,* 241 Mass. 427; *Marshall* v. *Cram, ante,* 124, and cases cited. Moreover, even if the deceased had been influenced unduly by her brother in making her will she had ample time — seven months — after his death in which to change it if she so desired. See *Swift* v. *Charest,* 268 Mass. 47, 49. In fact thereafter she made the codicil in question expressly confirming the will, as to which he could have exercised no undue influence, and this codicil if valid rendered immaterial any question of his undue influence in the matter of the will. *Taft* v. *Stearns,* 234 Mass. 273. Obviously no issue could have been granted as to the fraud or undue influence of "any other person or persons." *Fuller* v. *Sylvia,* 240 Mass. 49, 55. *Old Colony Trust Co.* v. *Pepper,* 248 Mass. 263, 265.

No error of law is shown by the record in the denial of the issues as to execution and undue influence, or, in the opinion of a majority of the court, in the denial of the issues as to soundness of mind.

*Order denying motion for jury issues affirmed.*