FREDERIC S. HARVEY *vs.* FANNIE B. KNAPP.

Middlesex.    November 6, 1929. — February 8, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Probate Court, Jury issues.    Unsound Mind.    Undue Influence.*

At the hearing of a motion for the framing of a jury issue as to whether an alleged testatrix was of sound mind when she made her will, the contestant by statements of counsel offered to show that, when the instrument was executed, the decedent was sixty-eight years of age; that, two days before, she had been operated on for gall stones, when it was disclosed that she was suffering from cancer; that on the afternoon of the execution of the instrument she had a hemorrhage and had been given strong stimulants; that for about thirty years

she had had a mental disorder and insane delusions against her sister, the contestant, and such delusions had continued up to the time of her death; that a condition of dementia praecox would be shown by the testimony of two experts on mental diseases, in whose opinion the delusion respecting her sister was formed nearly thirty years before and existed at the time the alleged will was executed. The decedent died the day after the instrument was executed. The motion was denied. *Held,* that

(1) Upon the statements of counsel as to what the contestant expected to prove respecting the mental capacity of the decedent to make a will, there was no presentation of facts upon which to found a reasonable hope for a result favorable to the contestant;

(2) The motion properly was denied.

The contestant in the proceedings above described was a sister and sole next of kin of the decedent and also sought the framing of a jury issue as to whether the will was procured to be made through fraud and undue influence of the principal beneficiary under it, and offered to show that such beneficiary had been a domestic nurse, was not related to the decedent, had been acquainted with her two years before her death and during her sickness had performed intimate personal services for her; that she told the decedent shortly before the will was made that the latter had cancer and could not live; that the decedent had a conversation with her and, following that, at her instigation, a lawyer was sent for, and that the beneficiary stood at the foot of the bed or beside the decedent when the will was being prepared. The motion was denied. *Held,* that

(1) Even such evidence would not prove that such beneficiary influenced the decedent to make a will: there was nothing to show that the decedent ever had any conversation with the beneficiary relative to the disposition of her property, and nothing which would warrant a jury in finding that the will was executed by reason of any influence practised upon her by the beneficiary.

(2) The motion properly was denied.

PETITION, filed in the Probate Court for the county of Middlesex on December 11, 1928, for proof of the will of Addie L. J. French, late of Lowell.

The sole next of kin, Fannie B. Knapp, appeared to oppose the petition and moved for the framing of the issues described in the opinion. The motion was heard by *Harris,* J., a stenographer having been appointed under § 18 of G. L. c. 215, in the amended form appearing in St. 1924, c. 194, § 1. Material evidence offered by counsel for the parties is described in the opinion. The motion was denied. The contestant appealed.

*F. W. Morrison,* for the respondent.

*F. S. Harvey, pro se.*

CROSBY, J.  This is an appeal from an order denying a motion to frame issues to be tried by a jury, upon a petition for the allowance of an instrument purporting to be the last will of Addie L. J. French.  The motion was filed by the respondent, Fannie B. Knapp, a sister of the decedent, and her only heir at law.  The issues presented by the motion are (1) whether the instrument purporting to be the last will of Addie L. J. French was executed according to law; (2) was she at the time of the execution of the alleged will of sound mind; and (3) was the execution of the alleged will procured by the fraud or undue influence of one Mary Garner.

The case was heard upon statements made by counsel for the contestant and for the petitioner, respectively, as to the nature of the evidence each expected to be able to present. A stenographer was appointed under the provisions of G. L. c. 215, § 18, as amended.  The motion was denied by the judge of probate, and the case is before us on an appeal from the denial of the motion.  There is nothing in the statements made to show that the instrument was not legally executed and that issue need not be further dealt with.

Upon the issue of the mental capacity of the deceased to execute the alleged will, counsel for the contestant stated as follows: The decedent was sixty-eight years of age on December 5, 1928, the day the alleged will was executed. For about a year and a half prior to that time she had been afflicted with cancer without her knowledge, and when the instrument was executed the disease was in an advanced stage.  On December 3, 1928, she was operated on for gall stones by Dr. Gardner, a witness to the will which was executed two days later.  Dr. Gardner had not seen her before he was called to operate.  The operation disclosed that she suffered from cancer.  For about thirty years she had had a mental disorder and insane delusions against her sister, the contestant, and such delusions continued up to the time of her death, and would be shown by letters written by her.  A condition of dementia praecox would be shown by the testimony of two experts on mental

diseases, in whose opinion the delusion respecting her sister was formed nearly thirty years ago and existed at the time the alleged will was executed. The contestant proposed to show that an uncle of the decedent was committed to an insane hospital in 1917. The judge ruled that unless insanity could be traced to a common ancestor, such evidence would not be competent. Counsel for the contestant also relied on statements written in a diary kept by the decedent's husband in the year 1910, and contended that the decedent was not then of sound mind; that she was a very nervous woman and had attacks of nervousness which caused vomiting; that she was not willing to do what her doctor directed, and that such attitude was one of the symptoms of dementia praecox. The contestant produced an abstract from a record of a hospital where the decedent was a patient in 1910, in which the diagnosis was given as "neurasthenia"; her illness was described as worry over trivial matters, lack of sleep and poor appetite, irritability and physical fatigue without adequate reason, and that she was in a state of absolute dejection. The physical examination was as follows: "A well-nourished individual and perfectly normal in all organs, etc."

Counsel further stated: The will was made about a quarter to seven o'clock on December 5, 1928. At about four-thirty o'clock on that day the deceased had a severe hemorrhage and vomited a large amount of a reddish fluid, and was so much worse that the superintendent of the hospital injected five grains of caffein under the patient's skin. At five o'clock her pulse was one hundred twenty, very weak and irregular, and Dr. Gardner arrived about half an hour later and gave her subcutaneously a quarter of a grain of morphine; at six o'clock she was given a strong heart stimulant. Two medical experts would testify that when the will was made at a quarter before seven that night, the patient, according to the hospital record and bedside notes, was suffering from shock.

The record shows that the alleged will was executed at the Lowell Corporation Hospital; that Dr. Varney, the attending physician, Dr. Gardner, who performed the operation,

and the decedent's nurse were all present, and that Dr. Gardner, the decedent's nurse and another nurse were witnesses to the will.

Counsel for the proponent stated as follows: Both Dr. Varney and Dr. Gardner would testify that the deceased was of sound mind when the will was made, both had expressed that opinion to the attorney who drafted the will immediately before it was prepared to be signed and witnessed, and Dr. Gardner had testified in the Probate Court in proof of the will that the decedent was of sound mind at the time of its execution. Dr. Varney began treating Mrs. French in the month of August before her death, and treated her continuously during that season and called at her house probably every other day during that time. He stated her general health was excellent, that the only complaint she had was with reference to her stomach, and said, "There is absolutely no question about the condition of her mind." He would testify there was nothing in her physical condition which would in any way tend to weaken or enfeeble her mind. The attorney who drafted the instrument had stated the conversation which he had with Mrs. French as to the disposition of her property, and had said she gave him explicit directions respecting her wishes. He was present while the instrument was executed by her and signed by the witnesses. His statement tended to show that the deceased was of sound mind.

Upon the statements of counsel as to what the contestant expected to prove respecting the mental capacity of the decedent to make a will, there is no presentation of facts upon which to found a reasonable hope for a result favorable to the party requesting the framing of an issue upon that question. *Fuller* v. *Sylvia*, 240 Mass. 49, 53. *Johnson* v. *Talbot*, 255 Mass. 155. *Union Trust Co. of Springfield* v. *Magenis*, 259 Mass. 409. *Old Colony Trust Co.* v. *Landers*, 262 Mass. 268. *McIntosh* v. *McIntosh*, 263 Mass. 315. *Brackett* v. *Harris*, 263 Mass. 334. *Taylor* v. *Callahan*, 265 Mass. 582. *Swift* v. *Charest*, 268 Mass. 47. The case is distinguishable from *New England Trust Co.* v. *Folsom*, 268 Mass. 342, where the decedent's family physician testified

that she was not of sound mind, and there was other testimony to the same effect.

The decedent died on December 6, 1928, leaving an estate of about $72,000. By her will Mary Garner was given $20,000 and also the decedent's household furniture and certain personal effects; she was also named as the sole residuary legatee. A gift of $1,000 was made to the contestant. A gift of $10,000 was made to the Worcester Polytechnic Institute, "the same to be expended for the same purposes as the donation hereintofore given to said Institute by my said deceased husband."

Upon the issue of undue influence, which the contestant contends was practised by Mary Garner, who had been a domestic nurse, it appears that the latter was not related to the decedent, but they had been acquainted for at least two years before the decedent's death. It was stated by counsel for the contestant that the decedent refused to go to a hospital; that Mary Garner came to her house one or two days a week and gave her a bath and did those things which she could not do herself; that Mrs. Garner went there the night before the decedent went to the hospital to stay during the period she was in the hospital, to keep the house warm and for other purposes; that after the operation Mrs. Garner visited her frequently, but did not notify any of her relatives that she was ill until shortly before her death; that Mrs. Garner talked with the deceased when she made such visits; that she stood at the foot of the bed or beside her when the will was being prepared; that she asked the doctors to get a lawyer to make the will; that she told the decedent shortly before the will was made that the latter had cancer and could not live; that the decedent had a conversation with her and following that, at the instigation of Mrs. Garner, a lawyer was sent for.

It is the contention of the contestant that, in view of the opinion of the two alienists, and the correspondence of the deceased, and her mental and physical condition, she could be easily influenced, and that the will was executed by reason of undue influence practised by Mrs. Garner who was

present at that time. It is also suggested by the contestant as tending to show undue influence that Mrs. Garner did not seasonably notify the relatives of the decedent of her condition. If all the statements made by the contestant could be proved by evidence they fall far short of showing that Mary Garner influenced the decedent to make a will. There is nothing to show that the decedent ever had any conversation with Mary Garner relative to the disposition of her property, and nothing which would warrant a jury in finding that the will was executed by reason of any influence practised upon her by Mrs. Garner.

The statements of counsel and the letters written by the decedent plainly show that her relations with the contestant had not been friendly for many years; the decedent told Dr. Gardner she had not seen the contestant for twenty-five years. It seems apparent that she never intended to make any large bequest to her sister. She had executed two wills previously to that presented for probate; in the first, executed in 1918, in addition to a share of the residue she bequeathed to her sister the sum of $5 with the following statement: "she having received already, her full proportionate share from her family's estate." This will was made at the same time as a will executed by her husband. In 1923 the decedent made another will in which the contestant was bequeathed the sum of $500.

These earlier wills not only show that the decedent did not intend to leave a large part of her estate to her sister, but clearly indicate that this intention was not formed as the result of any undue influence exercised by Mary Garner, as these earlier wills were made several years before the deceased knew Mary Garner. There is nothing in the statements made by counsel to the judge tending to show that Mrs. Garner concealed the condition of the deceased from her relatives or friends, or attempted to prevent them from seeing her, as appeared in *Old Colony Trust Co.* v. *Landers, supra.*

It appears that when the decedent entered the hospital she and the doctors believed that she was suffering from gall stones and that she would recover. It was not until she

was operated upon that it was found that she was suffering from cancer and could not recover. She was not informed of the nature of her trouble until an hour or an hour and a half before the instrument was executed. It was stated by counsel for the contestant that the doctors "held a consultation and decided to get a lawyer to make this will"; that "it was the doctor who called the lawyer" and that Dr. Gardner called the attorney who prepared the will; that the decedent told the attorney that she wanted to make her will. From these undisputed facts it is plain that the decedent had no intention of making a will until she had learned of the seriousness of her condition. There is nothing to show that Mary Garner influenced or attempted to influence the decedent to make a will. The case is governed in principle by *Neill* v. *Brackett*, 234 Mass. 367, 373, *Cummins* v. *McCawley*, 241 Mass. 427, *Old Colony Trust Co.* v. *Landers*, *supra*, *McIntosh* v. *McIntosh*, *supra*, *Brackett* v. *Harris*, *supra*, and *Swift* v. *Charest*, *supra*.

There were statements made by counsel for the contestant other than those hereinbefore referred to, which we do not deem it necessary to recite in detail. Upon examination of the offer of proof and giving to it the weight to which it is entitled, it cannot be said that the judge of probate erred in refusing to frame the issues. The contestant's "Motion to add an additional issue for jury trial" was rightly denied. The statements of counsel to the judge included acts and conduct of Mary Garner upon the issue whether the will was procured to be made by fraud or undue influence on her part, and undoubtedly were considered by the judge under the third issue contained in the original motion, although the motion was not in proper form. Besides, the contestant was not harmed by the refusal of the judge to grant the additional issue as the statement of counsel would not have warranted a finding that the will was procured to be made in whole or in part by undue influence of Mary Garner.

*Orders denying issues affirmed.*