CHIRON W. SMITH *vs.* ALICE M. PATTERSON.

Middlesex. November 8, 1933. — May 24, 1934.

Present: RUGG, C.J., CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Probate Court,* Jury issues. *Will,* Validity. *Unsound Mind. Undue Influence.*

At the hearing of a motion for jury issues by next of kin contesting a petition in a probate court for proof of a will, the circumstances, that the decedent had lost the sight of one eye and might have had diffi-culty in the use of the other eye, were insufficient to require the framing of an issue as to the due execution of the alleged will where it

appeared that it was drafted under the direction of a trained lawyer who had long been a friend of the decedent and who read it aloud to him before it was signed.

Upon appeal from a decree on the motion above described, this court, considering the provisions of the alleged will; a statement by counsel for the contestant of expected evidence to the effect that, as the decedent grew older, he was careless of his personal appearance, was eccentric and had arteriosclerosis, and of expected testimony by two attending physicians that he had not been of sound mind; and a statement by counsel for the proponent of expected testimony by many acquaintances of the decedent that they had seen no conduct of his indicating abnormal tendencies in him, and by his family physicians of many years that he was of sound mind, *held*, that there was no error in a refusal by the judge of probate to frame an issue as to the decedent's soundness of mind.

By the alleged will above described the decedent gave the contestant certain books and heirlooms and a life estate in his home, and gave most of the remainder of his property to charities in which he was interested. The value of the estate was $50,000 and the assessed value of the home was $6,000. It appeared from the statements of counsel that the decedent was a widower; that the contestant was his adopted daughter and his sole next of kin; that in each of several previous wills, the last of which had been made about six weeks before the instrument offered for probate, the greater part of his estate had been given to or for the benefit of the contestant; that, shortly before such instrument was executed, a certain man visited the decedent and made to him false statements highly derogatory to the conduct and character of the contestant, the proponent told the contestant not to come to see her father until he sent for her, and the proponent's wife said, "We've got . . . [the decedent] now where we want him" and said that the best thing would be for the contestant to be "taken away" and not to return; that the decedent felt badly because she did not come back to him; and that, although the proponent, his wife and the man were not beneficiaries under the instrument offered for probate and were not actuated by hope of personal gain, they were actuated by ill will toward the contestant. *Held*, that the framing of an issue as to undue influence exercised by those three persons could not be said to have been unwarranted.

It was further *held*, in the proceedings above described, that the statements of counsel showed no ground for the framing of an issue as to undue influence exercised by three other persons, who possibly merely spoke to the decedent about his will, and the suggestions respecting whom amounted to no more than vituperative epithets.

PETITION, filed in the Probate Court for the county of Middlesex on October 5, 1932, for proof of the will of George Lamson Patterson, late of Marlborough.

A guardian *ad litem* for the respondent was appointed. He filed a motion for the framing of jury issues, as described in

the opinion. The motion was heard by *Campbell*, J., upon statements by counsel of expected evidence. A decree entered on the motion by order of the judge is described in the opinion. The petitioner, the guardian *ad litem* and Union Rescue Mission, one of the legatees named in the alleged will, appealed. The statements by counsel were reported.

*H. F. R. Dolan*, for the petitioner and another.

*H. F. Butler*, (*W. E. Clapp, W. Temple, & E. C. Mack* with him,) for the respondent.

RUGG, C.J. George L. Patterson died in Marlborough in the county of Middlesex in October, 1932, leaving an instrument purporting to be his last will, which has been offered for allowance by the petitioner, named therein as executor. The decedent was about fifty-eight years of age at his death. His only heir at law is an adopted daughter. The decedent and his wife adopted this child when she was about seven years old. She was about eighteen years old at the time of his death. The wife died within two or three years after the adoption. The value of the estate is approximately $50,000.

The adopted daughter through her guardian contests the allowance of the will and has filed a motion for the framing of issues to be tried to a jury. The trial judge did not frame issues as to the due execution of the will, or as to his soundness of mind, but allowed an issue as to the fraud or undue influence of named persons in procuring the making of the will. The appeal of each party brings the case here.

The principles of law governing the framing of issues in a case like the present are established and need not be repeated at length. *Fuller* v. *Sylvia*, 240 Mass. 49. *Cook* v. *Mosher*, 243 Mass. 149. *Clark* v. *McNeil*, 246 Mass. 250. The motion was heard on oral statements of expected evidence presented by the attorneys for the contestant and the proponent. Statements in opposition to the motion, as well as those in its support, may be considered. Briefly stated, the inquiry for this court is whether there appears upon the record to be a genuine question of fact supported by evidence of such substantial nature as to afford ground for reasonable expectation of a result favorable to the party

requesting the framing of issues. *Johnson* v. *Loring*, 267 Mass. 310, 311. *Swift* v. *Charest*, 268 Mass. 47. *Bacigalupo* v. *Cuneo*, 277 Mass. 474. *Connolly* v. *Phipps*, 280 Mass. 263, 265. *Cranston* v. *Hallock*, 281 Mass. 182.

Plainly there was no ground for the framing of an issue as to the due execution of the will. It was drafted under the direction of a trained lawyer who had long been a friend of the decedent and who read it aloud to him before it was signed. The circumstances that the decedent had lost the sight of one eye and may have had difficulty in the use of the other are quite insufficient to require the framing of this issue. *Collis* v. *Walker*, 272 Mass. 46. *Hogan* v. *Whittemore*, 278 Mass. 573, 577.

It cannot be said that there was error in the refusal to frame an issue as to soundness of mind. It was stated in behalf of the contestant that two physicians who had attended the deceased in Maine, where he spent some time, would testify that he had not been of sound mind and that there was evidence that as he grew older he was careless of his personal appearance and was eccentric and had arteriosclerosis. His family physician in Marlborough for about thirty years and his family physician in Maine would testify that he was of sound mind; and many acquaintances that they saw in him no conduct indicating abnormal tendencies. While he was not an ordained clergyman, he was a lay preacher and devoted himself entirely to religious and charitable work. The will offered for allowance was dated August 18, 1932. By it family books and heirlooms and a life estate in the home of the decedent, assessed at $6,000, were given to the adopted daughter. The other chief beneficiaries of the will were four charities in which the decedent was interested. By a previous will dated July 8, 1932, and by three still earlier wills made after the death of the decedent's wife, the bulk of his estate had been given to or for the benefit of the adopted daughter. The four charities to which the residue of the estate was given by the will here in question had been beneficiaries in previous wills. Upon this state of the record there was no error of law in the denial of this issue. *Johnson*

v. *Jenks*, 253 Mass. 25. *Johnson* v. *Talbot*, 255 Mass. 155, 157. *Taylor* v. *Creeley*, 257 Mass. 21, 29. *Taylor* v. *Callahan*, 265 Mass. 582. *Harvey* v. *Knapp*, 270 Mass. 354, 357.

Between July 8, 1932, and the eighteenth of the following month, a period of about six weeks, the feeling of the deceased, as manifested by the instruments executed as wills on those two dates, underwent a great change with respect to the adopted daughter. That change challenges attention. The evidence stated in behalf of the contestant is that Kenneth A. Soule, shortly before August 18, 1932, visited the decedent and made to him false statements highly derogatory to the conduct and character of the adopted daughter; that the proponent of the will told the adopted daughter in July, 1932, not to come to see her father until he sent for her, and that his wife said to her and to the woman with whom she was living in Maine on two different occasions in July and August, "We've got Patterson now where we want him and the best thing you can do is to take her away and not come back"; and that the decedent felt badly because she did not come to him. No one of the persons charged with exercising undue influence is a beneficiary under the instrument offered for probate as a will. It is stated, however, that the three persons above named were actuated by ill will toward the adopted daughter rather than by hope of personal gain. Weight is to be attributed to the decision of the probate judge. *Bemis* v. *Andrews*, 280 Mass. 409, 411. All this is slender on which to frame an issue for undue influence as defined in our decisions. *Hoffman* v. *Hoffman*, 192 Mass. 416. *Neill* v. *Brackett*, 234 Mass. 367, 369–370. *McMann* v. *Murphy*, 259 Mass. 397. See *Lewis* v. *Corbin*, 195 Mass. 520. With some hesitation we are of opinion that as to these three persons the decision to frame the issue cannot be pronounced unwarranted. As to the other persons named, there is no evidence whatever to justify including them in the issue as having exercised undue influence. The most that appears is that there was a possibility that they may have spoken to the deceased touching his will. One was his housekeeper in the interval

of a few weeks after he left the hospital and before he died. Two of them went to see the adopted daughter in Maine during the summer of 1932 to urge her to see her father. The suggestions respecting them amount to nothing more than vituperative epithets. The statements respecting these other persons fall far short of affording any ground for framing an issue on undue influence. *Neill* v. *Brackett,* 234 Mass. 367, 371–373. *Anderson* v. *Jackson,* 286 Mass. 146.

The decree framing the issue on undue influence is amended by striking out the names of "Mrs. A. A. T. Guy," "Mrs. Denise sometime housekeeper for the deceased and Mrs. Jacobs," and as thus amended is affirmed.

*Ordered accordingly.*