· THOMAS C. O'BRIEN vs. JAMES F. COLLINS.

Suffolk.    November 8, 1943. — February 1, 1944.

Present: FIELD, C.J., LUMMUS, QUA, & RONAN, JJ.

*Probate Court, Jury issues.  Unsound Mind.  Undue Influence.*

The framing of a jury issue as to testamentary capacity in a contested
will case was error where, although it appeared that the alleged will
gave the bulk of the decedent's property to sisters of his deceased wife
and there was expected evidence that he had been subject to epileptic
seizures and had drunk intoxicating liquor to excess, there was also
substantial expected evidence favorable to the proponent, including
expected testimony by the decedent's physician that he had testa-
mentary capacity and expected evidence that the provisions of the
alleged will were reasonable because, among other circumstances, the
decedent's property had been inherited from his wife.

It was error in a contested will case to frame a jury issue as to undue
influence exercised by two persons, not kin of the decedent, who were
given substantial parts of his estate by the alleged will where, although
one of them had an opportunity to exercise undue influence, state-
ments of expected evidence upon which the motion for framing the
issue was heard did not show that either of them ever spoke to the
decedent about a will or any gift of his property and did show that
the dispositions of property in the alleged will were decided upon by
the decedent after extensive deliberation with his attorney and were
similar to those in a will executed by him several years before, and
that there were ample reasons for such dispositions.

PETITION, filed in the Probate Court for the county of
Suffolk on February 9, 1943, for proof of the will of Joseph
H. Collins, late of Boston.

Jury issues were framed by *Dillon, J.*  The petitioner
appealed.

In this court the case was submitted on briefs.

*John S. Stone*, for the petitioner.

*J. H. Flanagan*, for the contestant.

FIELD, C.J.   Joseph H. Collins, late of Boston, died Feb-
ruary 8, 1943.   An instrument purporting to be his last will,
dated August 2, 1940, was presented for probate by the per-
son named therein as executor.   James F. Collins, a brother
of the decedent, one of his next of kin, contested the allow-

ance of the alleged will, and, upon his motion, the judge of probate ordered trial by jury upon the issue of the testamentary capacity of the decedent and the issue whether the execution of the alleged will was "procured to be made by the fraud or undue influence of Nellie H. Daniels, Joseph Shields, Annie E. Shields, Helen Downer, Nora C. Murphy, Annie F. McDonnell, Elizabeth Lucey or any of them, exercised upon the said Joseph H. Collins." From this order the person named in the alleged will as executor appealed.

The case was heard upon statements of expected evidence by counsel for the contestant, and by the person, an attorney, named in the alleged will as executor, appearing for himself, herein referred to as counsel for the proponent. "Statements in opposition to the motion, as well as in its support, may be considered . . . . The question before us is whether, upon the statements of counsel, there appears to be 'a real and true question of fact to be tried supported by evidence of a substantial nature' . . . giving ground for 'a reasonable expectation of a result favorable to the party requesting the framing of issues.' . . . On this question, in which there is an element of discretion, 'Weight is to be attributed to the decision of the probate judge,' even though this court has before it everything that was before him." *Cranston* v. *Hallock,* 281 Mass. 182, 184. See also *Baker* v. *Owens,* 293 Mass. 318, 319. We think that, in accordance with these principles, giving due weight to the exercise of discretion by the probate judge, the order for the framing of issues was wrong upon the statements of expected evidence.

The next of kin of the decedent were a brother of the decedent, the contestant, and three children of a deceased sister, Joseph Shields, Annie E. Shields Hellstrom and Helen Downer. The alleged will contains the following provision with respect to the contestant: "I purposely refrain from making any bequest or devise to my brother James F. Collins of the Roslindale District of Boston, Massachusetts, who I feel is adequately cared for as beneficiary of my policy of insurance in the Brotherhood of Railroad Trainmen." Apparently, however, the brother had never been named as the beneficiary of this policy, which had previously been payable

to the wife of the decedent, who predeceased him, and which is now a part of his estate. The alleged will contains bequests of $200 each to each of the other next of kin. It provides further for gifts to each of four of the five sisters of the deceased wife of the decedent: to Nora C. Murphy and Annie F. McDonnell each the sum of $500; to Nellie H. Daniels "the house, fixtures, and furnishings, and the lot of land at 9 St. James Street in the Roxbury District of Boston, Massachusetts"; and to Elizabeth Lucey the rest, residue and remainder of the property of the decedent. Apart from the real estate at 9 St. James Street, having a sale value of $2,000, the estate of the decedent at the time of his death consisted, so far as appears, of from $5,000 to $6,000 in cash, the insurance policy referred to in the alleged will worth $1,000, and another insurance policy worth $200, making an aggregate value of from $8,200 to $9,200, of which $600 is given by the alleged will to the next of kin of the decedent and from $7,600 to $8,600, subject to the payment of funeral expenses and expenses of administration, is given to the sisters of the deceased wife.

The contestant relies in part upon the argument that the alleged will was unreasonable in its provisions in that by it the decedent gave much the greater part of his property to the sisters of his deceased wife rather than to his next of kin. Although the reasonableness of the provisions of a will may have some bearing upon the issues of the testamentary capacity of a decedent and undue influence exercised upon him, even if the provisions seem to be unreasonable, this fact "would not of itself justify" a finding that the alleged will "was the product of an unsound mind or of undue influence." *Davenport* v. *Johnson*, 182 Mass. 269, 272. See also *Old Colony Trust Co.* v. *Di Cola*, 233 Mass. 119, 125–126. The statement of expected evidence, however, discloses reasons for the disposition by the decedent of his property in accordance with the provisions of the alleged will that might not unnaturally have led him to make a will of the general nature of the alleged will.

It apparently is undisputed that the property which the decedent left at the time of his death, including the real

estate at 9 St. James Street, was property, or the proceeds of property, that he had received as his distributive share of the estate of his deceased wife who died in 1932. She had acquired the property in the bakery business. She had been employed in that business both before and after her marriage to the decedent in 1908, and had carried on the business as her own for about fourteen years. For about twenty years the business was conducted on the first floor of the premises at 9 St. James Street, and the decedent and his wife had lived on the second floor of the premises. The decedent continued to live there until his death. The value of the decedent's estate at the time of his death, so far as appears, was about $6,000 less than the value of the property that he received in the distribution of the estate of his wife. According to the statement of expected evidence by counsel for the contestant the decedent depleted his property more than $6,000 by "checks cashed in taverns." According to the statement of expected evidence by counsel for the proponent "he had placed $7,000 in cash with an insurance company to pay annuities to Mrs. Daniels and Mrs. Murphy."

Two of the sisters of the decedent's deceased wife, Annie F. McDonnell and Nora C. Murphy, had at times during the life of the wife assisted her in the bakery business and had been members of the Collins household at 9 St. James Street. The sister Nellie E. Daniels came to live in the house with them shortly before the death of Mrs. Collins. After her death this sister and the sister Nora C. Murphy continued to live there, Mrs. Daniels being the housekeeper, she and Mrs. Murphy caring for the decedent and the decedent paying the household expenses. The relations between the decedent and the sister Elizabeth Lucey seem to have been somewhat more remote. She never lived in the household. The fifth sister Mary Naughton is not mentioned in the will.

The alleged will discloses that the decedent had in mind all of his next of kin. Three of them are given pecuniary legacies. And a reason is stated for making no gift to the other next of kin, the brother of the decedent, the con-

testant, although the stated ground of this reason appears not to be correct. As to two of the next of kin, there is no statement in the expected evidence whether the decedent was friendly or unfriendly to them. Nothing in the expected evidence discloses any special reason for making these next of kin beneficiaries of larger amounts than are given to them by the will, or indeed of any amounts, apart from the mere fact that they are next of kin. As to a third next of kin, the niece Annie E. Shields Hellstrom, there is a general statement of friendliness between her and the decedent. He used to stop and speak to her when she was at her work as a collector for the Boston Elevated Railway Company and he once procured a job for her husband. So far as the brother of the decedent, the contestant, is concerned, the statement of expected evidence by his counsel is that "throughout their entire lives their lives were interwoven by close association, by persistent visiting, by constant communication, by regular routine Sunday night visitations between James and Joseph, and that always the relationship was as it should be." But in the statement of expected evidence by counsel for the proponent it is stated that in discussing the disposition of his property by will the decedent said that "his brother James was comfortably situated and did not need any moneys from him," and that "James and he didn't see each other very often, that he, Joe, went to his work and returned to his home and did very little visiting" — a statement more closely applicable to the time of the execution of the alleged will than the more general statement made by counsel for the contestant. Nothing in the statement of expected evidence considered most favorably to the contestant discloses any special reason for making the decedent's brother, the contestant, a beneficiary under the will other than the mere fact that he was one of the next of kin of the decedent and that the relations between him and the decedent were actively friendly, "as it should be" between them. No such close relations between them are shown as indisputably existed between the decedent and at least two of the sisters of his deceased wife, Nellie H. Daniels and Nora C. Murphy who, after the

death of his wife, had lived in his household and cared for him. Obviously, it cannot rightly be said that it would be unreasonable for the decedent to give preference in his will to these sisters of his deceased wife over his own next of kin. It cannot rightly be said that in so doing he was not recognizing the natural recipients of his bounty. A somewhat similar reason — though perhaps of less weight — applies to the decedent's giving a legacy to a third sister of the deceased wife, Annie F. McDonnell. In this aspect of the matter, however, the expected evidence shows less reason for the decedent's gift to the fourth sister, Elizabeth Lucey.

There is, however, another reason applicable to all four of the sisters that might not unreasonably have led the decedent to give the greater part of his property to them. The property disposed of by the alleged will undoubtedly was property or proceeds of property earned by the deceased wife of the decedent and received by him in the distribution of her estate. It cannot be pronounced unreasonable for the decedent to give this property to the sisters of his deceased wife, treating it, to some extent at least, as if it was being distributed by her. See *Glover* v. *Hayden,* 4 Cush. 580, 582–583. And the expected evidence contains statements of the decedent tending to show his recognition of the fact that his property had come to him from his deceased wife and of his feeling of obligation to her sisters. Even though the reason for the precise form of distribution by the decedent of his property among these sisters is not wholly apparent, the provisions of the alleged will are not of such a nature as to cast doubt upon its validity, in the absence of any more definite evidence that the decedent was not of sound mind or that his alleged will was procured to be made by fraud or undue influence.

1. There is nothing in the expected evidence tending to show that the decedent did not understand, in a general way, the nature and situation of his property, although apparently he was mistaken in thinking that his brother, the contestant, was the beneficiary of the policy of insurance in the Brotherhood of Railroad Trainmen. And as already pointed out, it is apparent that he had in mind his relations

to his next of kin, and to other persons who might be thought to be the natural recipients of his bounty. It does not appear that in these respects the decedent did not possess the essential qualities of a sound mind pointed out in *Ronan* v. *Moroney*, 313 Mass. 475, 477-478, and cases cited.

The expected evidence upon the issue of testamentary capacity is evidence that for many years the decedent had been subject to epileptic seizures and had been in the habit of drinking intoxicating liquor to excess. There is expected evidence that on several occasions the decedent, as a result of an epileptic seizure, fell and injured his head and sustained other physical injuries. There is, however, nothing in the expected evidence tending to show that, by reason either of the decedent's being subject to epileptic seizures or of his having the habit of drinking to excess, his mind was so affected that he did not have sufficient mental capacity to make a will. See *Briggs* v. *Weston*, 294 Mass. 452, 455. There is no statement of expected medical evidence to this effect (see *Berry* v. *Leonard*, 273 Mass. 409, 410; *Mitchell* v. *McLaughlin*, 310 Mass. 41, 44) similar to the expected evidence in the case of *Simoneau* v. *O'Brien*, 311 Mass. 68, 69-70. The expected evidence "that the alcohol that he drank is one of the drugs that most easily reach the brain" does not go to this extent. No weight can rightly be given to the expected evidence of Nora C. Murphy that the decedent "was not fit to draw a will." Such evidence of a lay witness, who was not a subscribing witness to the will, could not be admitted in evidence at the trial of the issue of testamentary capacity although the facts upon which such an opinion was based might be admissible. *Old Colony Trust Co.* v. *Di Cola*, 233 Mass. 119, 124. *Old Colony Trust Co.* v. *Whitney*, 269 Mass. 519, 523. *Greene* v. *Cronin*, 314 Mass. 336, 341-342. The statements of expected evidence upon this issue, not here recited, are lacking in particularity. *Swift* v. *Charest*, 268 Mass. 47, 50. Moreover, even if at times the decedent had epileptic seizures or was intoxicated, there is no statement of expected evidence that at or about the time the alleged will was made the decedent had such a seizure or was intoxicated.

On the other hand, it appears to be undisputed that the decedent was employed by a railroad company for many years as a trainman or baggageman and continued to work at this employment until a short time before his death from coronary thrombosis, except when he was unable to work by reason of epileptic' seizures. And there is expected evidence from persons with whom he worked on the railroad that he performed his duties in a satisfactory manner and did not show any mental abnormality; that he "performed . . . [them] in a manner . . . better than the average employee." Furthermore, there is expected evidence of a physician, who had treated the decedent at intervals for a period of more than three years and had seen him three times in the month of December, 1942, and again a day or two before his death, that in the opinion of this physician the decedent "was of sound mind and had necessary testamentary capacity." Such evidence of his physician must be given due weight. (*Terry* v. *King*, 286 Mass. 598, 601; see also *Smith* v. *Patterson*, 286 Mass. 356, 359; *Murphy* v. *Donovan*, 295 Mass. 311, 314; *Barr* v. *Warren*, 299 Mass. 60, 63; *Foley* v. *Philbrook*, 300 Mass. 418, 420) particularly where, as here, there is no medical evidence to the contrary. Furthermore, there is expected evidence from the attorney who prepared the alleged will that the decedent's directions as to the disposition of his property "were made with the utmost deliberation and after a free discussion with his attorney with whom he had been acquainted for forty years," that in 1934 the decedent gave him instructions for the preparation of a will, which was executed, and that the provisions of this prior will were, in substance, the same as those of the alleged will now presented for probate except for substituting in the alleged will the pecuniary legacy to Annie E. Shields Hellstrom for a gift by the prior will of the proceeds of the policy of insurance which the decedent had converted into cash, and for increasing the amounts of the bequests to her brother and sister. The expected evidence need not be recited in more detail.

We are of opinion, giving due weight to the decision of the probate judge, that the expected evidence does not fur-

nish ground for a reasonable expectation of a result favorable to the contestant upon the issue of the decedent's testamentary capacity and that it was error to order the framing of this issue for trial by a jury.

2. There is nothing in the expected evidence tending to show that the alleged will was procured to be made by the fraud or undue influence of Joseph Shields, Annie E. Shields Hellstrom, Helen Downer, Nora C. Murphy or Annie F. McDonnell. Clearly such issues should not have been framed. See *Smith* v. *Patterson*, 286 Mass. 356, 360–361.

Moreover, notwithstanding the weight to which the decision of the probate judge is entitled, we are of opinion that expected evidence bearing upon fraud or undue influence of either Nellie H. Daniels or Elizabeth Lucey was not of such a substantial nature as to warrant the framing of an issue on this subject.

The governing principles are stated in *Mirick* v. *Phelps*, 297 Mass. 250, 252, as follows: "On the trial of such an issue the burden of proving fraud or undue influence is on the contestant. *Hogan* v. *Whittemore*, 278 Mass. 573, 578. 'Fraud and undue influence in this connection mean whatever destroys free agency and constrains the person whose act is under review to do that which is contrary to his own untrammelled desire.' *Neill* v. *Brackett*, 234 Mass. 367, 369, see also page 370. The issue, expressed in terms of 'fraud or undue influence,' is an established form (see *Fuller* v. *Sylvia*, 240 Mass. 49, 54–55), which is proper even if the expected evidence relates only to influence exerted through coercion rather than through deception — 'fraud' in the stricter sense. *Martin* v. *Martin*, 267 Mass. 157. See *Whitcomb* v. *Whitcomb*, 205 Mass. 310; *Angell* v. *Lighthipe*, 251 Mass. 525, 528; *Wellman* v. *Carter*, 286 Mass. 237, 253; *Briggs* v. *Weston*, 294 Mass. 452, 460. Undue influence need not be proved by direct evidence but may be inferred from attendant circumstances, though there must be more than mere suspicion. *Hoffman* v. *Hoffman*, 192 Mass. 416, 419. *Raposa* v. *Oliveira*, 247 Mass. 188, 190."

There is nothing in the expected evidence tending to show "fraud," in the stricter sense, of either Nellie H.

Daniels or Elizabeth Lucey. Doubtless the former had opportunity to exercise influence upon the decedent but there is no expected evidence of such opportunity on the part of the latter. There is, however, no statement of direct evidence that either of them influenced the decedent to make a will in the form of the alleged will, or to give any of his property to either of them. It does not appear that either of them ever spoke to him about making a will, or ever urged or even asked him to give her any of his property. According to expected evidence that is not disputed, no one went with the decedent when he consulted his attorney. If proof of undue influence is to be found, it must be by inference from attendant conditions.

There is, however, no statement of expected evidence of conditions from which an inference of undue influence should be drawn. There is a statement of expected evidence that Nellie H. Daniels "who lived in the house [of the decedent] . . . more than dominated the entire situation from the time that his wife died up until this very day." Such evidence is much too general to show that she procured the execution of the alleged will by undue influence even though coupled with expected evidence that the decedent "as a result of conditions in the home was obliged to leave there because of the constant bickering and arguing and domination" of Nellie H. Daniels, and that "he devoted all his time after his wife died . . . outside of his working hours, to the frequenting of taverns and to excessive drinking, with the exception of Sundays and sometimes on Sundays." There is no expected evidence that, apart from the effect of such conditions in the home, Nellie H. Daniels exercised any influence upon the decedent with respect to the management of his business affairs or his conduct in other particulars. The expected evidence of Nora C. Murphy, that "the condition of the will and the knowledge of the will that he had drawn bothered . . . [the decedent] himself for some time before he died," even if based upon statements made by him, has little if any tendency to show that at the time he made the alleged will he did so by reason of the undue influence of anybody. For more than two years after the

alleged will was made the decedent lived and worked at his employment away from the home in which, according to the statement of expected evidence, Nellie H. Daniels "more than dominated the entire situation," and the decedent had, so far as appears, ample opportunity to change the alleged will if he had desired to do so. *Swift* v. *Charest,* 268 Mass. 47, 49. *Old Colony Trust Co.* v. *Whitney,* 269 Mass. 519, 524. Moreover, the provisions of the alleged will were, in substance, the same as those of a will executed more than six years prior to the execution of the alleged will.

There is expected evidence of a general nature that Nellie H. Daniels held the decedent "incommunicado in his home and while he was in the hospital" and when he was confined to the hospital "prevented his nieces and the brother and other individuals from talking to . . . [the decedent] in regard to any question whatsoever." But this evidence purports to cover only a part of the decedent's time, and, according to the statement of expected evidence by counsel for the contestant, the decedent frequently saw and talked with his niece Annie E. Shields Hellstrom, and maintained close relations with the contestant, although on the latter point the statement by counsel for the proponent is not in accord.

The expected evidence falls short of warranting the framing of an issue as to fraud and undue influence of Nellie H. Daniels.

The statement of expected evidence as to fraud and undue influence of Elizabeth Lucey is a general statement that she was "outside the family circle" and "very close" to Nellie H. Daniels, and that the "arrangement of this will" was made by these two parties. The statement of expected evidence as a ground for the framing of an issue as to fraud and undue influence of Elizabeth Lucey fails with the failure of the expected evidence of fraud and undue influence of Nellie H. Daniels, as well as on other grounds. The fact that Elizabeth Lucey was given the residue of the estate of the decedent, though obviously her relations to him were less close than the relations to him of other sisters of his

deceased wife, at most, does not go beyond creating a mere suspicion. *Mirick* v. *Phelps*, 297 Mass. 250, 252, and cases cited.

*Order of the Probate Court reversed.*