IDA S. GRAUSTEIN *vs.* CHARLES B. WYMAN.

Middlesex.    October 22, 1924. — November 25, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Contract,* Performance and breach. *Sale,* Warranty, Of food. *Milk. Food. Evidence,* Competency, Presumptions and burden of proof, Relevancy and materiality. *Waiver.*

A provision in a contract for the sale of milk and cream to be used as food, that they shall be of standard quality, and the implied condition that they shall be fit for food, are vital and go to the essence of the contract.

Where, at the hearing by a judge without a jury of an action by a milk contractor for alleged breach by the defendant, a restaurant keeper, of an agreement to buy milk and cream from the plaintiff for two years, the judge finds, on evidence warranting his so doing, that the plaintiff repeatedly and persistently furnished to the defendant milk not of standard quality and unfit for food and that the defendant did not waive his right to object to such breach of the contract, a finding for the defendant is proper.

In the action above described, the question, whether the defendant had waived his right to object to the plaintiff's failure to furnish milk of standard quality and fit for food, was one of fact.

It appearing, at the hearing above described, that milk furnished to the defendant and also that furnished by the plaintiff to another customer of the plaintiff were mixed and tested in one large tank, testimony, tending to show that milk delivered by the plaintiff to the other customer during the period in question was below standard, properly was admitted.

At the hearing above described, the defendant, to prove that the milk furnished him by the plaintiff was below standard, was not bound to have an analysis made and did not need to rely solely upon testimony of a certified inspector and the use of inspected testing machines or on samples taken as required under G. L. c. 94, §§ 25-27, 35.

The judge who heard the action above described found, on evidence warranting his so doing, that at times milk furnished under the contract was delivered to the defendant by a milk contractor other than the plaintiff and that in so doing the second contractor acted for the plaintiff and as his agent. The judge admitted evidence concerning the conduct of the second contractor. *Held*, that the evidence properly was admitted.

There being evidence at the hearing of the action above described tending to prove that a person could make the Babcock test without any particular knowledge of chemistry and that anyone could observe on the glass the result indicated as to the butter fat content of milk, it was proper to admit testimony of the observations of witnesses who watched such tests.

CONTRACT for damages alleged to have resulted from a breach by the defendant of a contract to buy milk and cream of the plaintiff for a period of two years beginning January 1, 1915. Writ dated December 10, 1920.

In the Superior Court, the action was heard by *Keating*, J., without a jury. Material findings and rulings are described in the opinion. The judge found for the defendant. The plaintiff alleged exceptions.

*W. A. Graustein*, attorney in fact, for the plaintiff.

*R. G. Wilson, Jr.*, for the defendant.

SANDERSON, J. In this action the plaintiff seeks to recover damages for breach of a contract for the sale of milk to the defendant. The case was heard by a judge of the Superior Court, without a jury, who made a general finding for the defendant and also findings of fact covering the material issues. The case is before us on numerous exceptions to rulings of law refused and granted.

The plaintiff was engaged in the business of buying and selling milk, and is represented in this action by her husband, as attorney in fact. The defendant was engaged in the restaurant business in Boston. The declaration is inartificially drawn, but it alleges, among other things, that the plaintiff agreed to deliver to the defendant and the defendant agreed to buy from the plaintiff, all the milk and cream used in all the defendant's restaurants during a period of two years from January 1, 1915, to January 1, 1917. There was conflicting evidence as to the terms of the contract and as to whether there had been such a breach of it by the plaintiff as would justify the defendant in terminating it before the date of its expiration. Evidence was introduced sufficient to warrant the material findings of fact contained in the statement of findings and rulings which follow:

" In the years 1914, 1915, and 1916 the plaintiff carried on the business of buying, selling and delivering milk. She took no active part in the management of the business. Her husband, William A. Graustein, managed the business as her agent, and represented her in all matters relating to the conduct of the business. As her agent he was in charge of those who delivered milk for her, and whatever complaints were made concerning the quality of the milk by those to whom she delivered it were usually made to him.

" In the year 1911 or 1912 the defendant acquired a controlling interest in a corporation known as the Wyman Lunch Company, which conducted certain lunch rooms or restaurants in the city of Boston. In September, 1914, the defendant sold his interest in said Wyman Lunch Company and in the lunch rooms conducted by it to one Floyd. The defendant continued to conduct certain other lunch rooms or restaurants in the city of Boston under the name of Charles B. Wyman and Son in 1914, 1915 and 1916. After said sale by the defendant to Floyd, there was no connection between the business carried on by Floyd under the name of the Wyman Lunch Company and that carried on by the defendant.

" Shortly after the sale by the defendant to Floyd, said William A. Graustein represented to Floyd that his wife

or the Graustein Company held two promissory notes, on which said Wyman Lunch Company was liable, and that the plaintiff or the Graustein Company had a claim against said Wyman Lunch Company for an alleged breach of a contract to take milk and cream for ten years from June, 1911, on which claim an action against said Wyman Lunch Company was pending in court. Floyd disputed the validity of these claims and disclaimed liability therefor, but he made a written agreement in the name of the Wyman Lunch Company with the plaintiff and the Graustein Company that if the Graustein Company and the plaintiff would cancel and deliver said notes to the Wyman Lunch Company and dismiss said action in court, the Wyman Lunch Company would take whatever milk and cream it needed from January 1, 1915, to January 1, 1917, from the Graustein Company or the plaintiff, said milk and cream to be of standard quality and to pass all tests required by the Commonwealth of Massachusetts or by the city or town wherein the same is sold by said Wyman Lunch Company. Said agreement was executed on December 17, 1914, by the plaintiff and Graustein Company by William A. Graustein, its president, and by the Wyman Lunch Company by said Floyd, its treasurer, and was admitted in evidence and marked Exhibit 9.

" The plaintiff claimed in a part of her declaration and at the trial that the defendant signed said agreement, or one similar to it, in which he agreed, among other things, to cause the Wyman Lunch Company to agree to take milk and cream from the plaintiff or the Graustein Company for two years, and to give a note for $3,500 to the plaintiff or the Graustein Company as security for the performance of the contract by the Wyman Lunch Company.

" I find that the defendant was not a party to said written agreement or any similar agreement; that he did not agree to cause the Wyman Lunch Company to agree to take milk and cream from the plaintiff or the Graustein Company or to give its note for $3,500 as security as aforesaid, and that the defendant did not guarantee the payment of said note for $3,500 by the Wyman Lunch Company or the perform-

ance of said written agreement by the Wyman Lunch Company.

" I find that the defendant did not know that the plaintiff had any claim or was making any claim against the Wyman Lunch Company as aforesaid until said Floyd informed him of it shortly after said sale by the defendant to Floyd in September, 1914. The defendant denied the validity of said claims of the plaintiff against the Wyman Lunch Company, but because the claim was made against the Wyman Lunch Company in which the defendant had sold a controlling interest to Floyd, he, the defendant, agreed orally with the plaintiff, through her husband and agent William A. Graustein, to take the milk and cream which should be needed at his lunch rooms from the plaintiff for two years from January 1, 1915, to January 1, 1917, provided the milk and cream were of standard quality and price, and he gave to the said William A. Graustein for the plaintiff a memorandum in writing to that effect signed by him, and the plaintiff, through her authorized agent William A. Graustein, agreed to surrender said notes to the Wyman Lunch Company and to dismiss said action against the Wyman Lunch Company, and to supply the defendant at his lunch rooms with milk and cream of standard quality and price for said period of two years.

" For a few months, beginning with January 1, 1915, the milk and cream delivered by the plaintiff to the defendant was satisfactory, but after that down to about May 1, 1916, they were frequently of inferior quality. Numerous complaints about the quality of the milk were made to the defendant by his customers, and the defendant complained frequently about it to the plaintiff's husband and agent. At times the milk delivered by the plaintiff to the defendant was almost sour; at times it emitted a bad odor, and at times it was delivered in rusty and filthy cans. On one occasion the plaintiff's agent, William A. Graustein, gave the defendant $50 worth of milk to take the place of milk which had been delivered by the plaintiff and which the defendant had to throw away because it was bad. In October, 1915, a sample of the milk delivered by the plaintiff to the defendant

was tested by the inspector of milk for the city of Boston, and found to be below standard quality. On account of the quality of the milk, the defendant had threatened a number of times to cease taking milk from William A. Graustein, the manager of the plaintiff's business.

" In April, 1916, after the plaintiff had repeatedly delivered milk below the standard quality to the defendant, the defendant wrote to the plaintiff that the milk was unsatisfactory, and he intended to discontinue taking it on and after May 1, 1916, and about May 1, 1916, he ceased to take milk and cream from the plaintiff.

" I find that frequently in 1915 and down to May 1, 1916, the milk delivered by the plaintiff to the defendant was not of standard quality, and that it was not reasonably fit to be drunk by those who came to the defendant's lunch rooms to buy milk.

" I find and rule that the defendant did not waive the frequent failure of the plaintiff to deliver milk of standard quality, but complained to the plaintiff's manager, William A. Graustein, whenever milk below the standard was delivered, and insisted upon the performance of the contract by the plaintiff.

" I find and rule that the plaintiff knew that the defendant's purpose in buying milk of the plaintiff was to resell it to customers who came to his lunch rooms.

" I find and rule that the defendant performed his part of the contract down to May 1, 1916, or thereabouts, and was ready and willing to continue to do so, but that the plaintiff persistently delivered to the defendant milk which was not a proper quality or of the standard required by law, notwithstanding the frequent complaints made by the defendant to William A. Graustein, the plaintiff's manager, and that the defendant was justified in ceasing to take milk and cream from the plaintiff on or about May 1, 1916, and in terminating the contract.

" I find and rule that the frequent failures of the plaintiff to deliver to the defendant milk of standard quality was a material breach of the contract.

" I find and rule that at times from January 1, 1915, to

May 1, 1916, milk and cream were delivered to the defendant by the Graustein Company and by the Farmers Milk Company, of which companies William A. Graustein, the plaintiff's husband and agent, was president, and that in doing so said companies acted for the plaintiff as her agents."

Two grounds of defence set up in the answer and supported by evidence are: (1) that the milk delivered under the contract was not merchantable; and (2) that it was not of standard quality.

In a contract for the sale of milk and cream to be used as food, the provision that they shall be of standard quality and the implied condition that they shall be fit for use as food, are vital and go to its essence. " It is a requirement of identity between the thing which is described as the subject of the trade and the thing proffered in performance of it." *Inter-State Grocer Co.* v. *George William Bentley Co.* 214 Mass. 227, 231. There is an implied condition " that the thing sold was merchantable." *Farrell* v. *Manhattan Market Co.* 198 Mass. 271, 281. " Food for immediate use which is not fit to eat is not merchantable as food." *Friend* v. *Childs Dining Hall Co.* 231 Mass. 65, 71.

Of the sixty-six requests made by the plaintiff, a large number are for findings of fact upon which the judge is not required to take any action. *Davis* v. *Boston Elevated Railway*, 235 Mass. 482; and many of them are covered by the findings of fact which were made. Many of the requests for rulings of law are made immaterial by the rulings given and findings made by the court. Those that are not so disposed of will now be considered.

It is evident from the findings of fact that the trial judge was right in refusing to grant the plaintiff's request for a ruling that upon all the evidence and the law the finding must be for the plaintiff. " Waiver is the intentional relinquishment of a known right. . . . Whether there has been waiver is usually a question of fact." *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 150, 151. In this case the question was one of fact and not of law and it must be assumed that the trial judge in making the finding that there

had been no waiver took into consideration all the material evidence on that issue.

Evidence was introduced by the plaintiff tending to show that all milk delivered to the Wyman Lunch Company and the defendant after January 1, 1915, was mixed in one large tank and tested daily for the plaintiff and that none of it was below the standard. This made competent, at least in the discretion of the court, testimony offered by the defendant tending to show that milk from this tank delivered by the plaintiff to the Wyman Lunch Company during the period in question frequently was below the standard. The trial judge was justified in drawing the inference that milk from the same tank delivered to the defendant was of the same quality as that delivered to the Wyman Lunch Company. Parties to a civil action for damages for breach of a contract may show that milk is above or below the legal standard by any competent evidence. They are not bound to have an analysis made, and are not limited to proving it by the testimony of a certified inspector, by the use of inspected testing machines, or by samples taken as required in G. L. c. 94, §§ 25–27, 35. *Copeland* v. *Boston Dairy Co.* 189 Mass. 342.

At the plaintiff's request, the judge ruled that the burden of proof was on the defendant to show that the milk and cream delivered to the defendant by the plaintiff was below the standard required by the laws of the Commonwealth. This ruling is substantially like request numbered fifty-six, and is sufficiently favorable to the plaintiff. *Miller* v. *Post,* 1 Allen, 434. *Copeland* v. *Boston Dairy Co. supra.* *Conroy* v. *Mather,* 217 Mass. 91. *Whitcomb* v. *Boston Dairy Co.* 218 Mass. 24.

Exceptions were taken to the admission of evidence concerning the Farmers Milk Company. The questions objected to were competent because of the testimony that the plaintiff was supplying milk to the defendant a part of the time through the Farmers Milk Company; that it was billed in the name of Farmers Milk Company, and checks in payment for it were made to the Farmers Milk Company; that at one time, when milk taken from the Wyman restaurants

was found by the milk inspector to be below the standard, William A. Graustein said to him " that he thought the Farmers Milk Company ought to be complained of as that was the way they left the milk." There was also other testimony which justified the judge in making the finding " that at times from January 1, 1915, to May 1, 1916, milk and cream were delivered to the defendant . . . by the Farmers Milk Company . . . and that in doing so said companies acted for the plaintiff as her agents."

There was evidence tending to prove that a person could make the Babcock test without any particular knowledge of chemistry; that any one watching a testing machine while milk is being tested could observe on the glass the result indicated as to the butter fat content of milk. This testimony made competent the observations of witnesses who watched these tests.

No good purpose would be served by reviewing in detail the exceptions to the rulings as to admission of evidence; those not disposed of by the principles already stated should be overruled, either because they related to competent testimony admitted or because the questions excluded sought to introduce in evidence self-serving statements, testimony that raised merely collateral issues, statements or acts by third parties not binding on the defendant, other obviously incompetent and immaterial matter, or because no offer of proof was made as to the testimony expected in answer to an excluded question.

All exceptions saved by the plaintiff have been considered and no prejudicial error appears either in the admission or exclusion of evidence or in the treatment by the court of the plaintiff's requests for rulings.

*Exceptions overruled.*