AGNES T. CRANSTON *vs.* HARRIET C. HALLOCK & another.

Middlesex. October 5, 1932. — November 29, 1932.

Present: RUGG, C.J., CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Probate Court*, Jury issues. *Will*, Validity. *Unsound Mind. Undue Influence.*

At the hearing in a probate court of a motion for jury issues by the respondent in a petition for proof of a will, statements of expected evidence by counsel for the petitioner in opposition to the motion may be considered as well as statements of expected evidence by counsel for the respondent in support thereof.

Upon appeal from the denial of such a motion, which was heard by the judge of probate solely upon such statements, a stenographer having been appointed under G. L. (Ter. Ed.) c. 215, § 18, this court will give weight to the decision by the judge of probate even though there is before this court everything which was before him.

There was no error in the denial of such a motion as to the soundness of mind of the decedent and as to undue influence alleged to have been exercised upon him by the petitioner, his widow, where it appeared that, although the decedent had been insane for a few months about thirty years before his death and, at a time just before the execution of his alleged will and about nineteen months before his death, had suffered a shock, partially paralyzing him, and also, at a time not stated, his conduct had been peculiar in some respects, no medical opinion was offered by the respondents that he was insane at the time of the execution of his alleged will and the petitioner offered to show by medical evidence that he then was sane; that a first wife died about twenty-four years after their marriage, leaving two children, the respondents; that about five years later the decedent, against the opposition of the respondents, married the petitioner, a divorcee who had three children and who thereafter lived with him for about thirteen years until his death and cared for him in his last illness; that the respondents always were unrelenting in their hostility to the petitioner; that, after his second marriage, he left the respondents with his first wife's mother in the home where he had lived with his first wife, and occupied another home with the petitioner and her children, although he supported his children and their grandmother generously; that the petitioner induced him to provide for her by making her a joint tenant with him of their home, by opening a bank account for her, by making some of his life insurance payable to her and by conveying to her real estate of small value, and, after the marriage of his daughter, one of the respondents, caused the financial

assistance which he had rendered to his children and their grandmother to be reduced; that he had made a will shortly after his second marriage dividing his estate in equal thirds among the respondents and the petitioner; that the respondents were of mature years and not in need at the time of his death; and that by the will offered for probate he gave the bulk of his property to the petitioner, but made some provision for the respondents and for the children of the petitioner.

PETITION, filed in the Probate Court for the county of Middlesex on December 30, 1931, for proof of the will of John S. Cranston, late of Newton.

The respondents, children of the decedent, filed a motion for jury issues as follows:

"1. Was the instrument purporting to be the last will and codicil of said John S. Cranston dated June 6, 1930, and codicil October 9, 1931, executed according to law?

"2. Was the said John S. Cranston at the time of the execution of the said alleged will and codicil of sound mind?

"3. Was the execution of said alleged will and codicil of said John S. Cranston procured by the fraud or undue influence of Agnes T. Cranston, or any of them, exercised upon the said John S. Cranston?"

The motion was heard by *Leggat,* J., upon statements by counsel of expected evidence, a stenographer having been appointed under G. L. c. 215, § 18, as amended. Material portions of such statements appear in the opinion. The motion was denied, and the respondents appealed. The record did not include any findings of fact by the judge.

*W. A. Graustein,* attorney in fact, for the respondents.

*R. A. Cutter,* (*J. M. Raymond* with him,) for the petitioner.

LUMMUS, J.  This is an appeal from an order of the Probate Court denying the motion of the contestants in a will case to frame issues for trial by jury as to soundness of mind and undue influence. G. L. (Ter. Ed.) c. 215, §§ 16, 22. What constitutes unsoundness of mind and undue influence will be found discussed in *Marshall* v. *Cram,* 269 Mass. 124, and *Daly* v. *Hussey,* 275 Mass. 28, and cases cited. No evidence was taken, but counsel for the parties made statements, which are reported, as to the evidence which they intended to present at a trial. *Cook* v. *Mosher,* 243 Mass.

149. *Beal* v. *Davis*, 251 Mass. 175. Statements in opposition to the motion, as well as in its support, may be considered. *McIntosh* v. *McIntosh*, 263 Mass. 315. *Taylor* v. *Callahan*, 265 Mass. 582. *Swift* v. *Charest*, 268 Mass. 47. *Bacigalupo* v. *Cuneo*, 277 Mass. 474. The question before us is whether, upon the statements of counsel, there appears to be "a real and true question of fact to be tried supported by evidence of a substantial nature" (*Fuller* v. *Sylvia*, 240 Mass. 49, 53, *Sheppard* v. *Olney*, 271 Mass. 424), giving ground for "a reasonable expectation of a result favorable to the party requesting the framing of issues." *Johnson* v. *Loring*, 267 Mass. 310, 311. On this question, in which there is an element of discretion, "Weight is to be attributed to the decision of the probate judge," even though this court has before it everything that was before him. *Bemis* v. *Andrews*, 280 Mass. 409.

John S. Cranston, the decedent, was an insurance broker, about sixty-six years old when he died on December 17, 1931. While in college, in 1889, he married his first wife, by whom he had two children, the contestants of the will. In 1900 he had erysipelas, and as a result was insane for about four months. After that, he resumed his business and apparently was normal. His first wife died in 1913. From 1911 until April 13, 1918, his first wife's mother lived with him and his children, and took charge of the house. On April 13, 1918, against the opposition of his children and his first wife's mother, he married Agnes T. Bache, the proponent of the will, a divorced woman with three children. Leaving his children and his first wife's mother in their old home, where he supported them generously, he moved with his second wife and her children to Wakefield. His children and his first wife's mother were unrelenting in their hostility to the second wife, and would have nothing to do with her. In 1919 his second wife induced him to sell the estate in Wakefield and to buy a house in Newton which was conveyed to them as joint tenants. She also induced him to open an account in a coöperative bank for her, to make a part of his life insurance payable to her, to attempt to make over to her certain commissions due from insurance com-

panies, and to convey to her a piece of real estate of small value in New York.

On September 29, 1921, his daughter Harriet married Arthur Hallock. The decedent's second wife was not invited to the wedding, and objected strongly to the decedent's attending or giving any present, with the result that he did neither. Soon afterwards she caused the credit previously enjoyed by the first wife's mother and the decedent's children at the expense of the decedent to be cut off, except for a payment to the first wife's mother of $10 a month which continued until the death of the decedent. He continued however to furnish financial aid to his children to some extent.

On May 25, 1930, the decedent suffered a shock and became partially paralyzed. He had made, in April, 1918, a will dividing his estate equally among his two children and his second wife, one third to each. On June 6, 1930, with the assistance of Robert Jackson Cram, Esquire, an attorney at law, he executed a new will, giving the bulk of his estate to his second wife, but making some provision for both his children and the children of his second wife. His second wife was named as executrix. No medical opinion that the decedent was insane at or about the time of the execution of the will was offered, but the proponent offered to show the contrary by medical evidence and attesting witnesses. The decedent was not able thereafter to do any business. He had a high blood pressure and hardening of the arteries, and his brain did not have a sufficient blood supply. A codicil executed October 9, 1931, contained nothing to the advantage of the proponent, or to the detriment of the contestants. In November and December, 1931, the decedent often requested his second wife to telephone his children to find out how they were getting along, and as she refused to do so he found out through his attendant or nurse in the absence of his second wife.

The statement for the contestants also alleges that at some time not stated the decedent had a fear of coming to want, and stored bread crusts in anticipation of need; that he would talk about nothing but insurance, and would try

to sell insurance at unusual hours and on unseemly occasions; and that he was forgetful. We do not attempt to relate all the conclusions and charges contained in the statement, or indeed all the proposed evidence, but the foregoing summarizes the case to be presented.

The value of the estate did not appear. While the statement for the contestants declares that the decedent and his first wife together accumulated more than $65,000, there is nothing to show that any such sum is now in the estate. The counsel for the proponent asserts that the estate is small. The children are of mature years and so far as appears are not in need. The second wife, as the contestants themselves say, came to her husband without property. She lived with him thirteen years, and cared for him in his last illness. The will is not unnatural under the circumstances, and does not suggest either insanity or undue influence. In the opinion of a majority of the court, it cannot be said that the probate judge was wrong in denying the motion for jury issues.

*Order denying motion for issues affirmed.*