JOSEPH BARR *vs.* CHARLES R. WARREN & others.

Middlesex. November 9, 1936. — December 27, 1937.

Present: RUGG, C.J., FIELD, DONAHUE, & QUA, JJ.

*Probate Court,* Jury issues. *Undue Influence. Unsound Mind.*

No error appeared in the denial of a jury issue as to undue influence in the making of a reasonable will, substantially the same as a prior will, providing for next of kin and neighbors who had been kind and friendly to the testator, with only negligible provision for next of kin with whom he was not on intimate or friendly terms.

The denial of a jury issue as to testamentary capacity of a man over ninety years of age was not error where a statement of expected evidence by the contestant's counsel, contradicted in many particulars by the statement by the proponent's counsel, disclosed only infirmities and eccentricities which in themselves did not require the framing of the issue, and opinion testimony by alienists, who had never seen him, that the testator was of unsound mind.

PETITION, filed in the Probate Court for the county of Middlesex on December 23, 1935, for proof of the will of George A. Warren, late of Concord.

Motions for jury issues were denied by *Leggat,* J. The contestants appealed.

*M. J. Cohen,* (*J. P. Cassidy* with him,) for the appellants.
*H. R. Bygrave,* (*J. W. Byron* with him,) for the petitioner.

DONAHUE, J. These are appeals from an order of a judge of probate denying motions for the framing of issues for a trial by jury concerning an instrument dated July 3, 1934, offered for probate as the last will and testament of George A. Warren of Concord. The proposed issues which are

argued relate to the soundness of mind of the decedent and to undue influence. The case was heard on statements made by counsel of the respective parties as to the evidence which they expected to offer if there should be a jury trial.

The principles of law governing cases like this are well settled and have often been stated. *Fuller* v. *Sylvia*, 240 Mass. 49, 53. *Cranston* v. *Hallock*, 281 Mass. 182, 183, 184, and cases cited. *Mirick* v. *Phelps*, 297 Mass. 250. We need not here restate those principles, but we have them in mind in considering the statements as to anticipated evidence made by counsel in the present case.

The decedent on July 3, 1934, a year and a half before his death at the age of ninety-three, executed the instrument offered for probate. No question is now raised as to its due execution. Its provisions were not substantially different from those of an earlier will. The disposition of his property made by the decedent in the instrument in question does not appear, in the circumstances shown, to be abnormal or to give support to the contentions that he was unduly influenced or of unsound mind when he executed it.

It provided for the contestants, a brother and a nephew, two of his four next of kin, legacies of only negligible value. But the brother, who had lived in Florida for many years, and the nephew, who resided in California, were not on intimate or friendly terms with the decedent. No contention to the contrary is made by the contestants. Since a quarrel between the brother and the decedent as to the administration of their father's estate thirty years before, their relations had been unfriendly. The nephew had neither seen nor communicated with the decedent for thirty years.

The value of the property left by the decedent was over $60,000. The instrument in question gave a substantial part of his estate to two of his next of kin, a sister and a nephew. They visited him regularly and there was a normal, friendly, family relationship between them. To a cousin of the deceased wife of the decedent, who had at times kept house for him, the instrument gave a legacy of a savings bank deposit and made a devise of the home where he lived. What was given to his wife's cousin was

substantially what the decedent had received from his wife's estate.

The instrument named as its executor the decedent's nearest neighbor, Joseph Barr. It gave to him a legacy of a savings bank deposit and devised to him a strip of land twelve feet wide which apparently provided a needed means of access to the Barr home. It also provided legacies of savings bank deposits for Barr's wife and young daughter. Since the death of the decedent's wife, Barr and his wife frequently provided him with meals and were solicitous of his welfare, and ministered to him when he was ill. He often manifested his appreciation and his fondness for the Barr family. They were good neighbors and close friends. The contestants make no assertions to the contrary. We think that the statement of anticipated evidence made by counsel for the contestants furnishes no basis for the contention that fraud or undue influence was exercised by Barr or by his wife or by anybody else.

The contestants assert that the decedent was of unsound mind and the statement of their counsel contains many references to his conduct and his characteristics. Among other things it is said that he was quarrelsome and melancholy, garrulous in speech but secretive as to his wealth, opinionated and strong minded but inclined to brood and weep; that he was profane and penurious; that his scale of living was that of a poor man; and that he liked to talk about happenings in his youth but at times did not remember well recent events. Some of these traits and characteristics he apparently had all his life and others were not abnormal in a man of his advanced age. Taken by itself, the description of the decedent's conduct and habits in the statement made by counsel for the contestants did not require the probate judge to frame an issue as to his mental capacity to execute the instrument in question, which correctly named all his next of kin, adequately described his property and gave it to those who were kind to him rather than to those who were unfriendly and had manifested no interest in his welfare or in his existence.

The decedent, during a period of several years preceding the execution of the instrument, was at times ill, apparently chiefly from the results of arteriosclerosis. It did not appear to what extent, if any, he was thereby incapacitated from being up and about. During these illnesses, according to the statement made by the proponent's counsel, he was attended by local physicians who would testify, in the event of a jury trial, that he was at all ·times sane and intelligent. Other recitals of fact in that statement as to his life, conduct and condition would support the conclusion that he was of sound mind and had testamentary capacity.

It was stated by the contestants' counsel that in the event of a jury trial they would offer competent medical testimony to show that the decedent had hardening of the arteries of the brain and senile dementia, that his conduct showed an abnormal reaction to depression, and that he was of unsound mind and did not have the mental capacity to make a will. The bare fact, that the contestants of a will expect to introduce at a trial by jury of the issue of unsoundness of mind the opinion of a medical expert that the decedent was of unsound mind, does not compel a probate judge to frame such an issue. *Wellman* v. *Carter*, 286 Mass. 237, 242. *Smith* v. *Patterson*, 286 Mass. 356, 359. *Union Trust Co. of Springfield* v. *Kittredge*, ·298 Mass. 515.

Counsel for the contestants did not state what persons would give the expected expert testimony or that they had ever treated, or even ever seen, the decedent or that they had personal knowledge of any of the facts on which their conclusion would be based. The inference is that the proposed medical testimony would come from expert witnesses testifying in answer to hypothetical questions. Effect can be given by a jury to the opinion of an expert witness testifying in answer to a hypothetical question only if the assumed facts on which the opinion is based are found to be true. *Commonwealth* v. *Mullins*, 2 Allen, 295, 297. The hypothetical question in answer to which it was expected that the opinions of the contestants' expert witnesses would be

given in the event of a jury trial was not stated, nor were the assumed facts, on which it was expected that their answers would be based, specified.

If all the many recitals of fact in the statement for the contestants are treated as facts which would be assumed in such a hypothetical question, we do not think the probate judge was obliged to frame a jury issue as to the decedent's mental capacity. The statements of the respective counsel of the parties as to facts relating to the decedent's characteristics, conduct, condition and capacity were quite conflicting. The probate judge might have found that any facts which there was a reasonable expectation of proving would not justify the opinion of an expert witness that the decedent was lacking in testamentary capacity. Or he might have found that on all the facts which ought properly to be taken into account by a medical expert such a conclusion could not be reached. *Wellman* v. *Carter,* 286 Mass. 237, 243. *Woodwell* v. *Sloman, ante,* 17, 20. See also *Hicks* v. *H. B. Church Truck Service Co.* 259 Mass. 272, 275–276. In either event it cannot be said that the judge was wrong in refusing to frame the issue.

*Orders denying motions for issues affirmed.*