WILLIAM GILL & others *vs.* RICHMOND CO-OPERATIVE ASSOCIATION, INC.

Norfolk. March 5, 1940. — May 26, 1941.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Champerty. Attorney at Law. Contract,* What constitutes, Consideration, Implied. *Sale,* What constitutes contract of sale. *Frauds, Statute of. Agency,* Agent's knowledge, Scope of authority or employment. *Setoff. Judgment. Assignment. Bankruptcy,* Discharge.

One, who was not an attorney at law and who, as security for claims for expenses incurred and services rendered as attorney in fact for the plaintiff in several actions, took an assignment of the plaintiff's claim in one of such actions and thereafter conducted that action *pro se* as assignee but without any agreement that he should look only to the proceeds thereof for payment of his claims, was not thereby practising law unlawfully nor acting under a champertous contract.

A promise to buy at a certain price such goods as the promisor might order of the promisee bound the promisor to nothing and was no consideration for a counter promise to sell such goods, and there was no contract of sale.

The statute of frauds was no defence to an action by a purchaser of goods during a period of more than one year to recover an overpayment made to the seller in the mistaken belief that the payment conformed to the parties' oral understanding as to price.

A purchaser, who had accepted goods under an agreement made with an agent of the seller acting within his ostensible but outside his actual authority and without actual knowledge of the seller, and who, upon billings from the seller, mistakenly had paid therefor on a price basis which was in excess of that fixed by the agreement with the agent, was entitled to recover such excess from the seller.

A seller as a matter of law was bound by notice of an agreement as to price for a year made without his actual knowledge by his agent acting within his ostensible but outside his actual authority, and the same price basis became binding upon the seller when a succeeding

agent purported to renew with the purchaser the same price arrangement for further years although such succeeding agent reasonably understood that a higher price had been the basis for the first year; and the purchaser was entitled to recover from the seller payments mistakenly made during the later years in excess of the basis agreed upon with the earlier agent.

A judgment for the plaintiff in an action for goods sold was a proper subject of set-off in an action by the debtor against the creditor begun before such judgment was rendered.

An assignee of a chose in action took it subject to a right of set-off existing against his assignor at the time of the assignment, and a subsequent discharge of his assignor in bankruptcy did not prevent the set-off although it relieved the assignor from personal liability on the judgment.

CONTRACT. Writ in the Superior Court dated September 9, 1929.

The case was heard by *Hanify*, J. Proceedings are described in the opinion.

*R. Hall*, (*F. T. Iddings* with him,) for the defendant.

*W. A. Graustein*, *pro se.*

LUMMUS, J. On September 9, 1929, the four plaintiffs, brothers named Gill, brought this action of contract to recover for the breach of oral agreements by which the defendant agreed to sell to the plaintiffs whatever milk they might order for their business. On January 6, 1937, the case was heard by a judge, sitting without jury, upon successive reports of an auditor whose findings were not to be final, and other evidence that, as the judge said, did not affect the findings of the auditor. On January 3, 1938, the judge found for the defendant on the plaintiffs' declaration and also on the defendant's declaration in set-off. The case comes here primarily upon exceptions filed by William A. Graustein acting *pro se* and claiming to be the assignee of the cause of action of the plaintiffs.

On February 15, 1939, a bill was brought by the plaintiffs and Graustein to restrain the enforcement of the judgment obtained on February 19, 1934, by the defendant against the plaintiffs in the case of *Richmond Co-operative Association, Inc.* v. *Gill*, 285 Mass. 50, upon which execution issued for $3,060.86 damages and $97.40 costs, which judgment was the basis of the defendant's declaration in set-off. This bill

was filed in the action, and not entered as a separate suit, as it should have been.  From a final decree entered on July 17, 1939, permitting the defendant to use the judgment in set-off, but not to collect any balance from the plaintiffs personally, the plaintiffs and William A. Graustein as assignee claimed an appeal.  Moreover, the same parties claimed an appeal in the action of contract from the denial of their motion to dismiss the declaration in set-off, but this appeal must be dismissed because not authorized by G. L. (Ter. Ed.) c. 231, § 96.  The plaintiffs' exception to the denial on February 8, 1938, of their motion to amend the writ and declaration is obviously worthless, for the denial involved no ruling of law.  Like some other exceptions taken by them it needs no discussion.

At the threshold of the case in this court lie the exception of the defendant to the allowance of exceptions filed by William A. Graustein *pro se* as assignee of the cause of action, and the motion filed by the defendant in this court on February 11, 1940, to dismiss the exceptions and appeals filed by William A. Graustein *pro se* as such assignee, on the grounds (1) that he was practicing law without having been admitted to the bar, in violation of G. L. (Ter. Ed.) c. 221, § 46A, inserted by St. 1935, c. 346, § 2, and (2) that he was acting under a champertous contract.

There is ground for a contention, the soundness of which we need not decide in this case, that a pleading, an appeal, or any other step taken in a lawsuit on behalf of a party, by one having no right to act as an attorney at law, is a nullity where the want of authority of the purported attorney is seasonably raised or at least where it has already been raised; and the case will stand as though that step had not been taken.  *Henry L. Sawyer Co.* v. *Boyajian,* 296 Mass. 215, 218.

For a number of years we have observed that William A. Graustein, who, as the auditor found, apart from any question of judicial notice, is not an attorney at law, has conducted numerous lawsuits for other persons as "attorney in fact" when "specially authorized" in writing by the client under the supposed authority of G. L. (Ter. Ed.)

c. 221, § 49, now repealed by St. 1935, c. 346, § 3.[1]  Doubtless the same observation has been made by the Superior Court.  But after the *Opinion of the Justices,* 279 Mass. 607, was rendered on April 20, 1932, it became apparent that the statute cited afforded him no justification for practicing law without admission to the bar.  *Opinion of the Justices,* 289 Mass. 607, 612, 616.  *Matter of Lyon,* 301 Mass. 30.  In more recent cases he has prosecuted lawsuits *pro se* as assignee of the cause of action.  *Graustein* v. *H. P. Hood & Sons, Inc.* 293 Mass. 207.  *Graustein* v. *Boston & Maine Railroad,* 304 Mass. 23.  *Graustein, petitioner,* 305 Mass. 568.  *Graustein, petitioner,* 305 Mass. 571.

It is not unlawful to engage in the business of buying choses in action and enforcing them by suit if necessary. See G. L. (Ter. Ed.) c. 231, § 5; c. 221, § 48.  The long established business of buying commercial paper at a discount is of that nature.  But obviously the formal assignment of a claim may be used to conceal the actual relationship of attorney and client.  Where this appears, the court will tear away the pretence, and strike down any illegal attempt to practice law.  Moreover, an assignment to one who furnishes no consideration except his undertaking to prosecute the claim at his own expense and risk, and is to be rewarded only by a share of the proceeds, is champertous, whether he is an attorney at law or not.  *Belding* v. *Smythe,* 138 Mass. 530.  *Gargano* v. *Pope,* 184 Mass. 571. *Smith* v. *Weeks,* 252 Mass. 244.  *Sherwin-Williams Co.* v. *J. Mannos & Sons, Inc.* 287 Mass. 304.  *Baskin* v. *Pass,* 302 Mass. 338.  *Graustein* v. *Boston & Maine Railroad,* 304 Mass. 23.  *Brown* v. *Ginn,* 66 Ohio St. 316.  *Dahms* v. *Sears,* 13 Ore. 47.  *Ames* v. *Hillside Coal & Iron Co.* 314 Penn. St. 267.  *Sampliner* v. *Motion Picture Patents Co.* 255 Fed. 242.  Williston, Contracts (Rev. ed.) § 1715.

---

[1] *Sherwin-Williams Co.* v. *J. Mannos & Sons, Inc.* 287 Mass. 304, 309–310. *Wright* v. *Graustein,* 248 Mass. 205.  *Graustein* v. *Wyman,* 250 Mass. 290. *Titcomb* v. *Bay State Grocery Co.* 254 Mass. 599.  *Gast* v. *Boston Elevated Railway,* 270 Mass. 330.  *Westminster National Bank* v. *Graustein,* 270 Mass. 565.  *Eldridge* v. *Eldridge,* 278 Mass. 309.  *Cranston* v. *Hallock,* 281 Mass. 182.  *Graustein* v. *Dolan,* 282 Mass. 579.  *Richmond Co-operative Association, Inc.* v. *Gill,* 285 Mass. 50.

The present action of contract was begun in 1929 by William A. Graustein as "attorney in fact" for the plaintiffs, under a written power of attorney. On February 1, 1933, the plaintiffs assigned their claim to their mother Ellen Gill. The plaintiffs owed Graustein $1,200 for legal services in other matters and for money expended. It is not argued that this sum was not owed to Graustein. If he could not recover for legal services, there is nothing to show that he could not recover for the money expended. On February 16, 1933, the plaintiffs transferred to Graustein four shares in a corporation owned by them, and, since no other shares had been issued, these four shares gave him apparent ownership of the corporation. Ellen Gill exchanged with Graustein the claim assigned to her for these four shares, and assigned the claim to Graustein on April 28, 1934. On April 30, 1934, Graustein entered his appearance *pro se*, and on January 20, 1936, he was permitted to intervene as assignee. Since that time he has conducted the action and has brought it to this court *pro se* as assignee, ostensibly for his own benefit, although he has continued at times to use the names of the original plaintiffs as well as his own name. We speak of the plaintiffs without distinguishing between the original plaintiffs and Graustein as assignee.

In fact, however, as the auditor found, Graustein held the four shares only as security, and took the assignment only as security for the same debt of $1,200, plus the legal services and expenses of the present action, and subject to the duty of returning any balance to Ellen Gill. There was no agreement that Graustein should look exclusively to the proceeds of the assigned claim for payment. The mere fact that Graustein took an assignment as security did not make the arrangement champertous. *Tapley* v. *Coffin*, 12 Gray, 420. *Blaisdell* v. *Ahern*, 144 Mass. 393, 395. *Smith* v. *Weeks*, 252 Mass. 244, 251, 252. Graustein had a security interest of his own of long standing in the shares, and this was transferred to the claim assigned to him. His enforcement of his own claim could not be ruled as matter of law the practicing of law without authority.

The judge allowed his bill of exceptions, and thus determined in his favor any question of fact involved. We must, therefore, entertain Graustein's exceptions and appeal, and proceed to consider their merits.

The following findings appear in the reports of the auditor or in the findings of the judge made by inference from the findings of the auditor. The plaintiffs were partners in the business of distributing milk at retail in the neighborhood of Holbrook. The defendant was a corporation engaged in Vermont in shipping milk to local distributors in Massachusetts like the plaintiffs. From April 2, 1924, the plaintiffs, under an arrangement with an authorized agent of the defendant in Massachusetts named Edwards, received milk from the defendant at the Forest Hills railroad station at a price fixed by the can. On August 31, 1925, the plaintiffs told Edwards that they could buy milk cheaper elsewhere.

On the same day Edwards orally proposed on behalf of the defendant that it supply the plaintiffs for one year beginning September 1, 1925, and ending August 31, 1926, with all the milk they might order, at a price based on the average monthly price by the pound for butter as compiled by the New England Milk Producers Association, plus two cents a pound, adding the "Association's churn-gain of sixteen and two-thirds per cent." This proposal, which was orally accepted by the plaintiffs, was actually unauthorized but was within the apparent authority of Edwards. The officers of the defendant in Vermont never knew anything about the arrangement as to price made by Edwards with the plaintiffs, and all the milk shipped to them was billed in good faith and paid for, unknown to the plaintiffs, at the regular and usual prices of the defendant, which were higher than those proposed by Edwards.

On August 28, 1926, and again on August 31, 1927, Edwards having been succeeded by one DeRosier, the latter orally agreed on behalf of the defendant with the plaintiffs that the arrangement under which the milk was sold and bought should be extended for another year in each instance. But the plaintiffs reasonably understood

this to continue in force the butter fat price basis proposed by Edwards on August 31, 1925, while DeRosier reasonably understood this to continue in force the price basis on which the milk had actually been billed and paid for. The words of the oral agreements for the two succeeding years meant different things to the plaintiffs and the defendant. The judge found that because of this misunderstanding there was no binding contract for sale at a fixed price during the period after August 31, 1926.

There was much controversy before the auditor and the judge over the question whether the successive agreements were within the statute of frauds because not to be performed within one year from the making of them. G. L. (Ter. Ed.) c. 259, § 1, Fifth. *Nickerson v. President & Fellows of Harvard College*, 298 Mass. 484. The auditor found that the proposal made by Edwards included a provision that bills were "to be rendered on the fifteenth and last days in each month and to be payable on the tenth and twenty-fifth days respectively in the following months." The judge inferred and found "from the subsidiary facts found by the auditor that the parties contemplated and understood that milk delivered during one month should not be paid for until the succeeding month and that payment for milk delivered in the twelfth month was not to be made within one year from the making of the oral agreement." He ruled that the oral agreements could not be fully performed until the bills became payable, although all the milk might be deliverable within a year, and that the agreements fell within the statute of frauds. That, he ruled, prevented recovery for overpayments for the first year, beginning on September 1, 1925, and ending on August 31, 1926. The same reasoning was equally applicable to the two succeeding years, but as to them the judge rested his denial of recovery on the fact that the parties misunderstood each other when they agreed to continue the arrangement.

In truth, the whole discussion of the statute of frauds was beside the point. None of the three successive agreements constituted a contract binding on either party, apart

from that statute. The plaintiffs promised nothing except to buy such milk as they might order. The only measure of their promise was their own will. It was not like a promise to buy such milk as they might need in their business. Williston, Contracts (Rev. ed.) § 104A. *Burgess Sulphite Fibre Co.* v. *Broomfield,* 180 Mass. 283. *Brodsky* v. *George H. Morrill Co.* 237 Mass. 86. *Vitagraph, Inc.* v. *Park Theatre Co. of Boston,* 249 Mass. 25, 30. *Royal Paper Box Co.* v. *E. R. Apt Shoe Co.* 290 Mass. 207. Since the plaintiffs bound themselves to nothing, the defendant received no consideration for its promise to sell milk, and was not bound to sell any. Williston, Contracts (Rev. ed.) § 104. *Bernstein* v. *W. B. Manuf. Co.* 238 Mass. 589.

The whole effect of the agreement or arrangement made with Edwards was to furnish while it continued a price basis upon which it might be inferred that the parties contracted in making subsequent sales and purchases of milk. *Cold Blast Transportation Co.* v. *Kansas City Bolt & Nut Co.* 114 Fed. 77. So long as sales were made upon that price basis, overpayments beyond that price basis were recoverable as having been made under the mistaken belief that the bills paid conformed to that price basis. *Indemnity Ins. Co.* v. *Paige,* 299 Mass. 523, 527, and cases cited. Overpayments on sales made during the year beginning September 1, 1925, and ending August 31, 1926, are recoverable. They amount to $2,718.52. The judge was in error in ruling that the statute of frauds prevented recovery of that amount, and the plaintiffs' exception to that ruling must be sustained.

The real question as to sales made during the two succeeding years is whether they were made upon the same butter-fat price basis. The arrangement for the first year did not carry over into succeeding years by its own terms. The price basis for the succeeding years depends upon the construction and effect given to the talks between the plaintiffs and DeRosier.

The defendant, through its agent Edwards, had led the plaintiffs reasonably to believe that they were buying milk on the butter-fat price basis proposed by him; when they

talked with DeRosier about continuing the arrangement in force for the two succeeding years, they reasonably entertained a belief as to what it was that had been induced by the defendant through Edwards; and since it was the duty of Edwards as agent for the defendant to report his doings to the defendant, the defendant, even after Edwards had ceased to represent it in dealing with the plaintiffs, was bound by notice that Edwards had made a price with the plaintiffs on the butter-fat price basis and had induced that belief on the part of the plaintiffs. *Loring* v. *Brodie*, 134 Mass. 453, 459–462. *Cotter* v. *Nathan & Hurst Co.* 218 Mass. 315. *New England Trust Co.* v. *Bright*, 274 Mass. 407, 413–415. *Sarna* v. *American Bosch Magneto Corp.* 290 Mass. 340, 343. In *Stetson Press, Inc.* v. *Bunsen Oil Burner Corp.* 285 Mass. 291, the only agent who had knowledge had no authority to do anything with respect to the matter of which he had knowledge. It is true in the present case, as it was in that case, that (page 294) knowledge is important, not in itself, but "only as it gave character or legal consequence to the act of the corporation in" doing an act, in the present case supplying the milk. But it supplied the milk with imputed notice that Edwards had made a price on a butter-fat price basis, that DeRosier had agreed that that arrangement as to price should be extended, and that the plaintiffs had been led by its agents to believe that the milk was sold on a butter-fat price basis. Under these circumstances the familiar rule of contract applies, that "knowingly to lead a person reasonably to suppose that you offer and to offer are the same thing." *Timmins* v. *F. N. Joslin Co.* 303 Mass. 540, 542. Indeed, the defendant through DeRosier undertook to continue in force whatever price arrangement had been made by Edwards. The plaintiffs are entitled to recover the overcharge for the year ending August 31, 1927, amounting to $3,576.99, and the overcharge for the succeeding year, amounting to $1,998.70. The exception of the plaintiffs to the ruling that there can be no recovery for these amounts must be sustained.

The defendant by a declaration in set-off, filed by leave of court on January 20, 1936, endeavored to set off, against

any recovery by the plaintiffs, the judgment obtained by the defendant against the plaintiffs on February 19, 1934, for the price of milk sold to the plaintiffs, in the case of *Richmond Co-operative Association, Inc.* v. *Gill*, 285 Mass. 50. That case was already pending when the present action was begun. The nature of the claim in that case made it as capable of set-off as the judgment later obtained upon it. *Ryder* v. *Warren*, 295 Mass. 24. The fact that the form of that claim changed into a judgment during the pendency of the present action did not prevent set-off. The assignments of the plaintiffs' cause of action to Ellen Gill on February 1, 1933, and to Graustein on April 28, 1934, were legally subject to the defendant's right of set-off. *Goldman* v. *Noxon Chemical Products Co.* 274 Mass. 526, 529. *Old Colony Trust Co.* v. *National Non-Theatrical Motion Picture Bureau, Inc.* 274 Mass. 377, 380. *Federal Reserve Bank of Boston* v. *Gray-United Stores Inc.* 290 Mass. 77, 79. *Forastiere* v *Springfield Institution for Savings*, 303 Mass. 101, 102, 103. The discharge in bankruptcy obtained by the plaintiffs on August 30, 1938, upon a voluntary petition filed on March 8, 1934, discharged them from personal liability upon the judgment, but did not prevent its use as a set-off against any recovery by their assignee Graustein in this action. The disposition of this matter of set-off by the judge, both in this action for breach of contract and in the bill to restrain the enforcement of the judgment, was in conformity to these principles, and was without error.

The plaintiffs now argue in this court that the judgment ran against a corporation controlled by the plaintiffs as well as against them personally, and consequently could not be used as a set-off in the present action. G. L. (Ter. Ed.) c. 232, § 3. *Bridgham* v. *Tileston*, 5 Allen, 371. *Very* v. *Clarke*, 177 Mass. 52, 53. See also *Plymouth County Trust Co.* v. *Thornell*, 291 Mass. 189. But if the fact relied on can be inferred from the record before us, this question was not presented by any exception, and does not appear to have been even raised at the trial.

The assignee Graustein filed one hundred fourteen requests for rulings, many of which were refused. Such an

excessive number of requests in a controversy like the present one could hardly serve but to muddle the case and confuse the issues. We find no error in the way in which the judge dealt with them, in any respect covered by the exceptions taken. As we said in *Hietala* v. *Boston & Albany Railroad,* 295 Mass. 186, 195, "When so many requests are filed, in a case like the present, a party may expect adequate consideration of them, but not detailed discussion in an opinion."

The motion of the defendant to dismiss the exceptions and appeals of Graustein is denied; but the appeal of the plaintiffs and Graustein from the denial of their motion to dismiss the defendant's declaration in set-off is dismissed. The exceptions of the plaintiff and Graustein are overruled, except the exceptions of the plaintiffs to the rulings that they cannot recover the overpayments for the three years in question, amounting respectively to $2,718.52, $3,576.99, and $1,998.70, and these exceptions are sustained. A finding is to be entered for the plaintiffs upon their declaration, with damages assessed at the sum of those three amounts, plus interest from the date of the writ, September 9, 1929. The exceptions of the defendant are overruled.

*So ordered.*


In the bill filed by the plaintiffs and Graustein to restrain perpetually the enforcement of the judgment obtained by the defendant in the earlier action, the decree is affirmed with costs.

*Ordered accordingly.*