## A. BOILARD SONS, INC.
### vs.
### Frank SOLITARIO, d/b/a
### Frank SOLITARIO CONSTRUCTION

District Court Department
Appellate Division, Western District
Trial Court of the
Commonwealth of Massachusetts

**December 1, 1980**

---

[a] Mass. Adv. Sh. (1979) 2657 at 2658.

[b] Mass. Adv. Sh. (1979) at 2660.

John F. Fitzgerald/Robert M. Rosen for the plaintiff.
Donald P. Conway for the defendant.

Present: Larkin, J., Mullaney, J., Cimini, J.*

LARKIN, J. This is an action of contract in which the defendant, a building contractor, in filing a counterclaim, alleged that the plaintiff, a building supply company, "overcharged" him for goods sold and delivered. The materials in question were used in the construction of a building project known as "Corey Colonial Apartments". The counteraction was filed after the plaintiff had sued to recover the balance due on materials supplied the defendant. The District Court found for the plaintiff on the original claim and that judgment is not at issue here.

The record shows that in preparation for his Corey Colonial project, the defendant sought price quotations from various suppliers and subcontractors, including the plaintiff; however, no formal bids were ever sought from any subcontractor or supplier again, including the plaintiff. No contract was ever executed between the plaintiff and defendant for the supplying of any materials for the project at issue.

The plaintiff did prepare a "price flyer" of materials on February 12, 1971, entitled "Material Listing with Prices", and delivered this document to the defendant. The list contained some twenty-nine items of building materials.

On March 25, 1971 the record showed that the plaintiff submitted a revised price list to the defendant. Neither price list was ever signed by either party.

The defendant was given a third flyer dated February 21, 1973 by the plaintiff, but the material items were not the same as those on the earlier flyers. These three "flyers" were the only "writings" which were exchanged by the parties with reference to the project at issue.

In March, 1971, the defendant began construction on the apartment project, which was completed in December, 1973. No written contract was executed by the parties at any time during the course of the construction of project. The record showed that in a five to seven year period prior to the development of the Corey Colonial Apartments, the defendant had purchased approximately one million ($1,000,000.00) dollars in supplies from the plaintiff.

The plaintiff began supplying materials to the defendant in June, 1971 and over the course of the project provided materials aggregating some four hundred ninety-two thousand dollars, which the defendant paid without complaint. The price of the materials ordered and supplied was frequently higher than the prices shown on the February and March flyers; in addition, the defendant ordered many building materials from the plaintiff which were not included in the price flyers and did not order some of the materials which were included in the price flyers.

As bills for these materials became due, the defendant paid his account with the plaintiff promptly. He paid by checks in amounts which coincided with the monthly statement balances received by the defendant from the plaintiff. The defendant, in fact, frequently received cash discounts as

---

*Judge Cimini was present at the oral argument but did not participate in the preparation of this opinion.

a result of his prompt payment to the plaintiff for the supplies provided by the plaintiff for the Corey project.

The record showed that between 1971 and 1973 there were "massive price changes" in the cost of building materials in the construction industry. During this period, the plaintiff did not make any price quotations to the defendant or to any other customers which were valid for longer than sixty (60) days because, according to testimony of record, it could not afford to be locked into a fixed price for longer periods.

The trial judge found that defendant was aware at all relevant times that the material prices were increasing and never objected to the plaintiff or anyone else that the prices changes deviated from those on the flyer. This, despite the fact the defendant had retained accountants to oversee his financial affairs. Indeed, prior to the time the plaintiff originally brought suit against the defendant (for some $10,000.00) the defendant never complained to the plaintiff that the price of materials billed to him was in excess of the amounts listed on the price flyers. The first notice which the plaintiff had of the defendant's dissatisfaction was the filing of the counterclaim for some $100,000.00.

At the trial, the District Court found for the plaintiff on the original claim and against the defendant on his counterclaim.

The basic issue here is whether the triology of "flyers" constituted such a precisely delineated writing that it could be construed as a legally binding "offer", the acceptance of which by the defendant was sufficient to constitute an enforceable contract between the parties establishing fixed prices for the building supplies over the life of the construction project at issue. We believe that this question must be answered in the negative.

We agree with the rationale of the District Court that there is no evidence from which it could be determined that either the February 12, 1971 or February 25, 1971 "material listing with prices" was an offer to sell the materials listed for prices which would hold throughout the entire period of construction of the defendant's apartments. Accordingly, it would have been impossible for the defendant to "accept" the plaintiff's offer and rely on the prices in the "material listing with prices" since, neither in fact nor law, could they be viewed as "offers".

It is well settled that the formulation of a valid contract requires mutual assent of the parties, as manifested by an offer and acceptance. While the Uniform Commercial Code may have somewhat broadened the definition of contract and made contracts easier to form, see G.L. c. 106, sec. 1-201(1), since the term "offer" is not defined in the U.C.C. commonlaw principles of what constitutes an "offer" remains relevant. See, e.g., Gilbert & Bennett Mfg. Co. v. Westinghouse Elec. Corp., 445 F. Supp. 537, (D. Mass. 1977).

It is clear that advertisements by mail, price flyers, circular letters, or price catalogues, do not constitute offers. Montgomery Ward and Co. v. Johnson, 209 Mass. 89 (1911); Ashcroft v. Butterworth, 136 Mass. 511 (1884); Smith v. Gowdy, 90 Mass. 66, 8 Allen 566 (1864); Mellen v. Johnson, 322 Mass. 236 (1948); Kuzmeskus v. Pickup Motor Co., Inc., 330 Mass. 490, 115 (1953). Quotations of prices and price lists even where intended for only one party, similarly do not constitute offers to sell goods: Cannavino & Shea, Inc. v. Water Works Supply Corp., 361 Mass. 363, (1972); Kuzmeskus v. Pickup Motor Co., Inc., 330 Mass. 490, (1953). A recipient of such price flyer, price listing or quotation, in the position of the defendant, cannot reasonably believe that the one communicating intended the price listing to be a binding offer to sell or one which gives the recipient the power to conclude a contract: Cannavino & Shea, Inc. v. Water Works Supply Corp.; supra; Gill v. Richmond Co-op Association, 309 Mass. 73, (1941). At best, a price flyer, price listing, or generalized quotation, indicates a willingness to enter into negotiations, an invitation of proposals for sales, or a request that an offer be made. Cannavino & Shea, Inc. v. Water Works Supply Corp.; Montgomery Ward and Co. v. Johnson, 209 Mass. 89 (1911); Gilbert & Bennett Mfg. Co. v. Westinghouse Elec. Corp., 445 F. Supp. 537 (D. Mass. 1977).

These principles are articulated in Williston's definitive treatise on contracts as follows:

"If goods are advertised for sale at a certain price, it is not an offer, and no contract is formed by the statement of an intending purchaser that he will take a specified quantity of the goods at that price. The construction is rather favored that such an advertisement is a mere invitation to enter into a bargain rather than an offer. So a published price list is not an offer to sell the goods listed at the published prices. Even where the parties are dealing exclusively with one another by private letters·or telegrams, or by oral conversation, the same question may arise; and language that at first sight may seem an offer may be found merely preliminary in its character." 1 Williston, Contracts, sec. 27, p. 62 (3d ed. 1957).

On this record we believe that it is overwhelmingly clear that there was no evidence at the trial from which it could be determined that either the February 12, 1971 or February 25, 1971, material listinggs with prices, was an offer to sell the materials listed for the approximate price indicated for the total apartment complex buildings, nor was there any evidence that the plaintiff agreed to sell the materials listed for the total apartment project, nor, finally, that the defendant accepted said "offer" and was entitled to rely on the prices throughout the construction of the apartments.

We believe that there was no error and accordingly, the report should be dismissed.

So ordered.